**WRIGHT HYDRAULICS, INC., et al.,**
**Appellants,**

**v.**

**WOMACK MACHINE SUPPLY COMPANY**
**et al., Appellees.**

**No. 17325.**

Court of Civil Appeals of Texas,
Fort Worth.

May 26, 1972.

Rehearing Denied June 30, 1972.

Richards, Harris & Hubbard, Dallas, Wilson, McGee & Craig, and William T. McGee, Fort Worth, for appellants.

Cantey, Hanger, Gooch, Cravens & Munn, and Charles L. Stephens, Fort Worth, for appellees.

OPINION

MASSEY, Chief Justice.

The appeal is from an order granting temporary injunctions to two corporations,

Womack Machine Supply Company (of Dallas) and Womack Machine Supply Company of Houston, against various individuals who had been their former employees and against Wright Hydraulics, Inc., a company which had been organized by some of them and the interests of which were promoted by all, doing business in competition with both plaintiffs.

The prayer was for temporary injunction solely.

Basic objective of the suit in the trial court was two-fold: (a) to enforce written covenants of certain individual defendants not to compete with their former employer during the prescribed two-year period for which the covenant was effective after employer/employee relationships were severed, plus like enforcement against Wright Hydraulics, Inc., where its ability to compete was derivative through aid of such individuals, and (b) use or disclosure by the individual defendants of the names of or credit information concerning: to quote from the temporary injunctive decree, ". . . any customers of the plaintiff companies, their affiliates, associates or subsidiaries . . . *learned while such defendant was an employee of any of such companies;* . . . provided, however, that nothing herein contained shall prevent the contacting of a former Womack customer, after the end of the proscribed period, *if the foregoing restrictions are not violated;* . . . ." (Emphasis supplied.) Wright Hydraulics, Inc., was additionally sought to be restrained from any use or disclosure of such customer information previously disclosed to it by any of such individual defendants, and enjoinder of it was a part of the decree of temporary injunction.

Decree of temporary injunction is modified, and as modified, affirmed.

■ Since corporations become entities upon incorporation their status before the law is that of individuals (in the ordinary case) despite the fact that one corporation may be the subsidiary of another, or the affiliate of any other, or of others. See 14 Tex.Jur.2d, pp. 111–138, "Corporations", and in particular paragraphs under "I. Introductory . . . C. Entity Concept", numbered Sec. 10, "In general", Sec. 11, "Legal consequences", and Sec. 14, "Affiliated or subsidiary corporations". Nothing in the instant case exists to invoke any exception, as, for example, a necessity to "pierce the corporate veil" to get at the actual wrongdoer, etc.

■ As in the case of individuals, where two or more corporations divide a state or states into separate trade areas wherein no one of them will compete with any other, an employee of one of them who leaves his employ and engages in like business to that of his former employer, but in a different trade area, does not thereby enter into competition with his former employer, and would not be considered to have done so even though he is in competition with another corporation his former employer would wish to protect. His action could not be restrained by his former employer under a covenant not to compete with it for a reasonable time, even though the language of the covenant included a promise not to engage in like business outside the trade area of such employer. Only by competition with the former employer in his own trade area might it be said that he could suffer harm. See generally 87 C.J.S. p. 312, "Trade-Marks, Trade-Names, and Unfair Competition," Sub. V, "Unfair Competition", and also § 87, "In General", and § 88, "Competition".

■ And, as applied to the limitation period for any non-competitive covenant applicability in a former corporate employer's own trade area, the tolling of such would date from the severance of employer-employee relations with it only; not from the date the former employee might have severed such relations with another and different employer, even though such subsequent employer was a subsidiary or affiliated corporation of the other.

Concerning the authority of a trial court invoked and authorized on petition to enjoin breach of a covenant not to compete an observation was made in Spinks v. Riebold, 310 S.W.2d 668 (El Paso Tex.Civ. App., 1958, error refused). The court stated that the Supreme Court's ruling in Lewis v. Krueger, Hutchinson and Overton Clinic, 153 Tex. 363, 269 S.W.2d 798 (1954) was "not whether or not the contract is valid, but as to what extent the court will aid the appellant in the enforcement thereof." Such has application to the non-competitive covenants made the basis of an important part of the subject matter presented on appeal; such having relation to the time period which must expire before a former employee could compete in the employer's own trade area, and to space (or trade area) wherein the court should restrict competitive activities during the interval before the end of that period.

■■ In the application of the foregoing principles this appellate court is authorized to modify the decree of temporary injunction from which the appeal has been taken, and, under the undisputed factual situation and law applicable thereto change the decree so that it would provide as follows:

The individual defendant, Sammy Fenn, would be—until August 1, 1972 (not December 17, 1973)—enjoined from engaging in competitive business with Womack of Houston in that company's trade area.

The individual defendants, Thomas L. Elliston, Henry R. Hruza, Jr., and Erick Boyd would be enjoined from engaging in competitive business with Womack of Dallas until dates of June 1, 1972, January 1, 1973, and December 29, 1973, respectively, in the trade area of Womack of Dallas.

Wright Hydraulics, Inc., would be enjoined from engaging in competitive business with Womack of Houston, in that company's trade area, until August 1, 1972 (date to which Fenn was properly restrained from engaging in such competitive

business), in the event Fenn owns any of its stock or engages in any way in its activities as its employee in its competitive business with Womack of Houston in that company's trade area.

Wright Hydraulics, Inc., would be enjoined from engaging in competitive business with Womack of Dallas, in that company's trade area, (a) until June 1, 1972, as applied to Elliston, (b) until January 1, 1973, as applied to Hruza, and (c) until December 29, 1973, in the case of Boyd,—in the event during said intervening periods and for the respective periods applicable to those respective defendants—they own any of the stock of Wright Hydraulics, Inc., or engage in any way in its activities in competitive business with Womack of Dallas in that company's trade area.

It is our conclusion and holding that the decree of the court as hereinabove specified would be correct; would conform to the *status quo* made a matter of contract by the individual defendants named, and would— as applied to Wright Hydraulics, Inc.—be authorized under equitable considerations aside from the matter of contract to which it was party but invoked because the true *status quo* of the individuals would be necessarily involved in its competition with the plaintiffs.

■ With the foregoing modification, in limitation, and the temporary injunctive decree treated as prepared in accord, we consider another and different part of the decree complained of on appeal.

Each of the individual defendants, inclusive of the defendants Elliston, Hruza, Fenn and Boyd, and also including others, to-wit: James B. Wright, Jr., John H. Chance, and Robert M. Schriever, were temporarily enjoined by the following language: "From using, directly or indirectly, or in any manner disclosing to any other person any knowledge of the names of or credit information concerning any customers of the plaintiff companies (Womack of Dallas and Womack of Houston), their affiliates, associates or subsidiaries herein-

**38**

above specified (Womack companies other than the plaintiffs, each of which does business in a trade area different from those of the plaintiffs), learned while such defendant was an employee of any of such companies; 'using' as employed in this paragraph shall mean attempting to sell to or soliciting purchase orders from such customer of the Womack organization of any fluid power components or accessories on the basis of such knowledge, or in any manner communicating with such customer concerning such customer's relationship with the Womack organization; . . . ."

The Wright Hydraulics, Inc., was temporarily enjoined from "In any way, directly or indirectly, inducing, causing, soliciting, or attempting to induce, cause or solicit, current, future or former employees of any of such plaintiffs, their affiliates, associates or subsidiaries aforementioned, including the individual defendants herein, to disclose to Wright Hydraulics, Inc., its officers, agents or employees, or to any other individual, firm, or corporation, the names or credit information on, any of the customers of any of the companies in such Womack organization, including, but not limited to, the plaintiffs herein, or any other information concerning such customers of a confidential nature that was acquired by any such person while employed by any such Womack company;

"In any way, directly or indirectly, disclosing or using any of such customer information previously disclosed to defendant Wright Hydraulics, Inc., by any of the individual defendants herein; . . . ."

Covenants not to compete were signed by all the individual defendants except Fenn and Schriever with Womack of Dallas; and Fenn signed such with Womack of Houston. Schriever never signed any such instrument. Those signed contained language, as follows: "The Employee recognizes and acknowledges that the list of the Employer's customers, as it may exist from time to time, is a valuable, special, and unique asset of the Employer's business.

Employee also recognizes that in the course of his employment he will learn the trade secrets, formulas, methods, inventions, and devices used in Employer's business, and, in some instances, will attend a school conducted by Employer for the purpose of teaching him the principle and practice of Industrial Fluid Power. The Employee will not, during or after the term of his employment, disclose the list of the Employer's customers, Employer's trade secrets, formulas, methods, inventions, or devices, or any part thereof, to any person, firm, corporation, association, or other entity, for any reason or purpose whatsoever. . . . In the event of a breach or threatened breach of any of the provisions of this paragraph by the Employee, the Employer shall be entitled to an injunction against Employee. . . ."

As indicated by language quoted from the decree of temporary injunction, covenants of the individual defendants were construed by the court below to mean that each individual defendant, save Schriever, was to keep secret from all others the identity of any customer whose identity was ascertained as such by reason of his employment. Such matter may in many instances be a "trade secret", though the term would not ordinarily apply thereto. It is commonly considered by the authorities along with discussion upon the law applicable to trade secrets, though distinguished therefrom. The same principles of law are applicable where it is factually determined that customer lists, etc., truly comprise confidential information belonging to a fiduciary and outside what might be termed the public domain. See 28 A.L.R.3d, p. 7, Annotation: "Former Employee's Duty, In Absence of Express Contract, Not to Solicit Former Employer's Customers or Otherwise Use His Knowledge of Customer Lists Acquired in Earlier Employment"; 165 A.L.R., p. 1453, Annotation: "Implied obligation of employee not to use trade secrets or confidential information for his own benefit or that of third persons after leaving the employ-

ment"; and 30 A.L.R.3d, p. 631, Annotation: "Employee's Duty, In Absence of Express Contract, Not to Disclose or Use In New Employment Special Skills or Techniques Acquired in Earlier Employment".

By contractual agreement the interested individual defendants removed any question of whether the identity of such customers amounted to confidential information secured by reason of the fiduciary relationship incident to their employment. Of course, as applied to the defendant Schriever, not having signed any contract, the same thing might not be true, for the names of the customers and the credit information about them might have been part of the public domain, or otherwise readily obtainable. Resolution of that question might be important upon trial of the merits on application for permanent injunction. However, the issue of its confidential character was raised by plaintiffs' evidence, under pleadings, and therefore the trial court was free to treat it as established for purposes of the temporary injunction proceedings and place restraint upon Schriever as well as the other individual defendants.

■ That action of the court would be proper because truly confidential information secured by reason of a fiduciary relationship may not be used or disclosed to the fiduciary's detriment irrespective of an agreement not to do so. K & G Oil Tool & Service Co. v. G & G Fishing Tool Service, 158 Tex. 594, 314 S.W.2d 782 (1958); Hyde Corporation v. Huffines, 158 Tex. 566, 314 S.W.2d 763 (1958); Welex Jet Services, Inc. v. Owen, 325 S.W.2d 856 (Fort Worth Tex.Civ.App., 1959, writ ref., n. r. e.), and other cases therein cited. There was no abuse of discretion in determining that use or disclosure of the confidential information should be temporarily enjoined.

■ However, in the instant case and as applied to defendant Fenn the *status quo* to be preserved would not include any prohibition of his using or imparting the knowledge of the names of or credit in-

formation concerning customers of anyone other than Womack of Houston (the employer for which he had signed his contract). Therefore it might be said that the jurisdictional authority of the trial court was never invoked so that it was authorized to enjoin Fenn's use or disclosure of some other Womack company, as, for example Womack of Dallas. To the extent the injunctive decree purported to do so these provisions should be modified by a limitation directed by this appellate court.

Exactly the same thing might be said of all the other individual defendants, whose contracts were with Womack of Dallas, as applied to use of or disclosure of confidential information of prospects who were not the customers of Womack of Dallas.

The decree of the trial court was too extensive. But that would not be something which would constitute cause to condemn it as an abuse of discretion. Rather does it exhibit an attempt to act in an area and upon subject matter when the authority to act had not been invoked—where the law would "withhold the hand of the court."

As applied to a use of confidential information which was the property of the employer enjoinder would be proper. Enjoining its disclosure to another would likewise be proper. And if the evidence revealed that the very use of such confidential information outside the applicable trade area would amount to its disclosure to others as persons who in reasonable probability would make use of it in competition with or to the detriment of the employer in its trade area a consequence would be to expand the scope of the *status quo* which the court could decide should be preserved by temporary injunction. Such was the situation in the instant case. The trial court was entitled to conclude for purposes of injunction, and pending hearing on the merits or hearing of a motion to vacate the temporary injunction, that any use of the confidential information would amount to disclosure probably operative to the employer's detriment in its trade area.

In view of the foregoing the decree of temporary injunction as applied to the individual defendants may be reformed so as to confine it to use of or imparting to any other person, firm or corporation, knowledge of the identity or credit information concerning customers of the particular plaintiff who was the employer of the individual concerned. Specifically, *in the case of Fenn*, this would mean customers of Womack of Houston, and in the case of the other individual defendants this would mean Womack of Dallas. In no case, however, would it mean knowledge of the identity or credit information concerning customers outside the employer's trade area, as of affiliated or subsidiary companies having a different trade area and different customers.

█ The individuals who were defendant, or some of them, organized the defendant company, Wright Hydraulics, Inc., to engage in a business competitive to that of the plaintiffs. Where any individual defendant is temporarily enjoined it would be proper to likewise enjoin Wright Hydraulics, Inc., because the evidence showed that such company was a device and *alter ego* through which such individual defendant accomplished, or attempted, a breach of his express or implied covenant not to use or disclose confidential information belonging to his fiduciary. Of course the temporary injunction decree in restraint of Wright Hydraulics, Inc., would be modified in conformity with the aforementioned modification of the decree in restraint of the individual defendants.

At an earlier point in the opinion we indicated the extent and form of our reformation and modification of the temporary injunctive decree of the trial court in respect of the action and threatened action to engage in competition with the two named plaintiffs.

As applied to the temporary enjoinder of any use of or disclosure of confidential information by the individual defendants, and the temporary enjoinder of Wright Hy-

draulics, Inc., from any like use and from any use of their confidential information including such of it already disclosed, we have held that there may be appropriate modification of the decree, with our modification specified.

Our conclusion and holding is that the temporary injunction should be modified so that its scope is limited as described hereinabove; as so modified, it is affirmed.