**PHILADELPHIA MANUFACTURERS MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**GULF FORGE COMPANY, Defendant.**

**Civ. A. No. H–80–1345.**

United States District Court, S.D. Texas, Houston Division.

Nov. 5, 1982.

Alan R. Miller, John N. Love, Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., James M. McGraw, Reynolds, Allen, Cook, Pannill & Hooper, Houston, Tex., for plaintiff; Jerome Gette, Robins, Zelle, Larson & Kaplan, Dallas, Tex., of counsel.

Kenneth R. Wynne, Alfredo Perez, Bracewell & Patterson, Houston, Tex., for Gulf Forge Co.

## ORDER

SINGLETON, Chief Judge.

## I.  HISTORY OF THE PROCEEDINGS

The genesis of this action was an explosion of a steam boiler that occurred at defendant Gulf Forge's premises on July 10, 1979.  Plaintiff Philadelphia Manufacturer Mutual Insurance Company (PMMI) sought a declaratory judgment to determine whether business interruption losses incurred by Gulf Forge in the wake of the boiler explosion were covered by the insurance policy issued by PMMI to Gulf Forge approximately one year before the boiler accident.  The insurance policy contained two types of coverage, one for "Fire and Extended Coverage"[1] and the other for "Boiler and Machinery".  Business interruption coverage was included under the former, but not the latter.  The cause of the boiler explosion dictated under which portion of the insurance policy resultant losses would be covered: if the explosion were caused by accumulated gases within the boiler, losses suffered were covered by the Fire and Extended Coverage portion, which included consequential business interruption losses; however, if the boiler failure were due to a low water level resulting in a steam explosion, losses were covered under the boiler and machinery section, which did not include a provision for business interruption losses.  PMMI and Gulf Forge had reached an impasse on the issue of whether a steam or gas explosion had caused the mishap when PMMI filed its declaratory action.

Gulf Forge brought counterclaims for breach of contract, contending that the boiler explosion was not caused by low water level and that under the insurance policy, PMMI owed the defendant an amount of money equal to its business interruption losses.  In addition, Gulf Forge counterclaimed for alleged violations of the Texas Consumer Deceptive Trade Practices Act (DTPA or the Act) and the Texas Insurance Code, for breach of the implied covenant of good faith and fair dealing, and for negligent inspection of the doomed boiler.

The issue of the cause of the boiler explosion was tried to a jury from May 24, 1982, through June 3, 1982.  The jury found that the explosion had not been brought on by gas combustion.  This meant that under the terms of the insurance policy, PMMI was not liable for defendant's business interruption losses.

Presently before the court is PMMI's motion for summary judgment on those issues set forth in Gulf Forge's counterclaim which were not resolved by the trial.[2]  Gulf Forge opposes plaintiff's motion and has submitted its own motion for partial summary judgment.

Gulf Forge advances five grounds for relief: (1) breach of contract, (2) promissory estoppel, (3) breach of the implied covenant of good faith and fair dealing, (4) violation of the DTPA and Insurance Code, and (5) negligent inspection.  Gulf Forge moves for summary judgment on the breach of contract and DTPA and Insurance Code claims.  PMMI moves for summary judgment on all of the above-numerated grounds for relief raised by the defendant.[3]

---

1.  The Fire and Extended Coverage insurance is also referred to as "named perils" coverage at various times in the record.

2.  On March 5, 1982, plaintiff filed a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).  This is converted into a motion for summary judgment since matters outside the pleadings have been accepted by the court.  *See* Fed.R.Civ.P. 12(b).

3.  In its memorandum supporting its motion for summary judgment, plaintiff states that this court had disposed of defendant's "statutory" claims by summary judgment on May 18, 1982.

After careful and deliberate consideration of the many issues involved in this case, this court has decided that plaintiff's motion for summary judgment should be granted on all claims asserted by Gulf Forge in its counterclaim except that claim which alleges a violation of the DTPA and Insurance Code. This court also has decided that Gulf Forge's motion for partial summary judgment should be denied.

## I. BREACH OF CONTRACT

■ After seven days of trial which were preceded by nearly two years of discovery, several pretrial conferences, and a lengthy conference which included detailed discussion on the wording of a special interrogatory to be submitted to the jury, Gulf Forge contends that the trial did not resolve the issue of whether Gulf Forge's insurance policy covered business interruption losses. Specifically, Gulf Forge now argues that the losses in contention were covered under the Fire and Extended Coverage policy because the boiler suffered a "collapse". Defendant's lengthy exposition on this subject notwithstanding, it is clear from the record that the trial was intended to resolve the question of whether by its terms the insurance policy covered business interruption losses. This court took special care to insure that both parties understood this. Gulf Forge has, therefore, waived any right to attempt to reopen the coverage issue with a new theory, and plaintiff PMMI is granted a summary judgment on the breach of contract issue.

## II. PROMISSORY ESTOPPEL

■ The doctrine of promissory estoppel has been adopted in Texas.[4] *Traveler's*

Plaintiff misunderstood the court's ruling. Plaintiff filed a motion for partial summary judgment or, alternatively, for *in limine* relief with respect to defendant's counterclaims based on the Texas Insurance and Business & Commerce Codes on December 1, 1981. On May 18, 1982, during a pretrial conference, this court granted the motion *in limine* but did not grant the partial summary judgment motion. Consequently, to the extent that PMMI reference to "statutory" claims refers to the Insurance and Business & Commerce Code claims, these claims are properly before the court.

*Indemnity v. Holman,* 330 F.2d 142 (5th Cir.1964); *"Moore" Burger, Inc. v. Phillips Petroleum Co.,* 492 S.W.2d 934, 937 (Tex. 1972); *Citizens National Bank v. Ross Construction Co.,* 146 Tex. 236, 206 S.W.2d 593 (1947). It has been applied in first party insurance situations where the elements of the doctrine are extant, *Traveler's Indemnity v. Holman,* 330 F.2d at 151. However, even assuming *arguendo* that defendant were able to meet its burden of proving the elements of promissory estoppel, this evidence would be barred by the Texas parol evidence rule. This rule renders inadmissible extrinsic evidence of prior or contemporaneous agreements that would vary the terms of written agreements that are unambiguous on their face and intended to embody all agreements existing between the parties. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 32 (1958). The Gulf Forge insurance policy expresses on its face the intent of the parties to have it embody all agreements arrived at by the insurer and insured. And, even if this express statement on the insurance policy were not, in and of itself, sufficient to call into play the parol evidence rule, Texas law makes it abundantly clear that a written contract is presumed to embody the entire agreement between the parties. *N.K. Parrish, Inc. v. Southwest Beef, Etc.,* 638 F.2d 1366, 1368–69 (5th Cir.1981); *Hubacek v. Ennis State Bank,* 317 S.W.2d at 32 (Tex. 1958). Gulf Forge has not rebutted this presumption. Thus, evidence of prior or inconsistent agreements between plaintiff and defendant are inadmissible to contradict the terms of the written contract. *N.K. Parrish, Inc. v. Southwest Beef, Etc.,*

4. Texas has accepted the Restatement of Contracts phraseology for promissory estoppel: A promise which the promissor should reasonably expect to induce action or forebearance of a definite and substantial character on the part of the promisee and which does induce such action or forebearance is binding if injustice can be avoided only by enforcement of the promise." Restatement, Contracts § 90 (1932).

638 F.2d at 1369; *See Lakeway Co. v. Leon Howard, Inc.,* 585 S.W.2d 660, 662 (Tex. 1979).

Defendant argues that the parol evidence rule is not pertinent to insurance policies because they do not generally reflect the conscious agreement of the parties. The cases cited by Gulf Forge do not support this contention. There is no indication from Texas case law that an exception is made for insurance contracts with regard to extrinsic evidence, *See* 23 Tex.Jur.2d *Evidence* § 6342 (1961 and Supp.1981).

Gulf Forge also contends that the cases cited by PMMI as support for plaintiff's position that evidence of a promise to provide inspection services is barred by the parole evidence rule, actually bolster defendant's position and stand for the proposition that insurance policies, like other written contracts, are subject to reformation on equitable grounds such as mutual mistake, fraud, or accident. *See Ross v. Stinnet,* 540 S.W.2d 493, 495 (Tex.Civ.App.—Tyler 1976, no writ); *Houston General Insurance Co. v. Lane Wood Industries, Inc.,* 571 S.W.2d 384 (Tex.Civ.App.—Fort Worth 1978, no writ). Defendant is correct that insurance contracts may be reformed on equitable grounds, but relief on grounds of mistake, fraud or accident has not been requested, nor has Gulf Forge asked for reformation of the insurance contract. Cf. *Fireman's Fund Indemnity Co. v. Boyle General Tire Co.,* 392 S.W.2d 352, 355 (Tex.1965). Therefore, this court cannot consider granting defendant relief on these bases.

Based on its understanding of Texas law, this court holds that the parole evidence rule is applicable to insurance policies in general, and to the insurance policy that is the subject of this lawsuit, in particular. Accordingly, any attempt by Gulf Forge to bring before the court evidence of a contemporaneous agreement by the parties that PMMI provide Gulf Forge safety inspection services is precluded, and PMMI is granted summary judgment on this issue.

## III. TEXAS CONSUMER DECEPTIVE TRADE PRACTICES ACT AND TEXAS INSURANCE CODE, ARTICLE 21.21.

Gulf Forge alleges that PMMI violated the DTPA and Texas Insurance Code by representing that its insurance policies possess "characteristics and benefits" which they do not have; that the insurance policies and benefits have a "particular standard, quality, or grade" which they do not, in fact, have; that PMMI did not sell the policies and benefits they advertised, that PMMI made "false and misleading statements concerning the reasons for the reduction in price of its premiums"; that plaintiff represented that its insurance policies "confer or involve rights, remedies, and obligations" which plaintiff refused to honor; and that PMMI "failed to disclose information concerning its insurance policies" and the benefits attendant on them and intended such failure to induce purchase of its insurance. Although there are no specific references to subdivision number, it is evident from the language of defendant's brief that it is accusing PMMI of violations of subdivisions (5), (7), (9), (11), (12), and (23) of subsection (b) of Section 17.46 of the DTPA.[5]

---

5. Tex.Bus. & Com.Code Ann. § 17.46(b) (Vernon's 1968 & Supp. 1981) provides in pertinent part:

[T]he term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have...;

(7) representing that goods are or services of a particular standard, quality, grade...;

(9) advertising goods or services with intent not to sell them as advertised;

(11) making false or misleading statements of fact concerning the reasons for, existence of, or amount of price reductions;

(12) representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve...;

Gulf Forge also claims plaintiff violated section 21.21 of the Texas Insurance Code. Again, although no mention is made of a particular subdivision, this court surmises that Gulf Forge is referring to Sections 4(1) and (2).[6] Article 21.21(4) is made actionable as a deceptive trade practice by article 21.-21(16)(a) of the Texas Insurance Code [7] and by article 17.50(a)(4) of the DTPA.[8] Article 17.46(b)(5), (7), (9), (11), (12), (23) of the DTPA are made actionable for damages by article 17.50(a)(1) of the same Act.[9]

■ As a starting point, Gulf Forge qualifies as a consumer as defined by § 17.45(4) of the DTPA since it is a corporation that purchased services which are the basis of this cause of action. *Cameron v. Terrell & Garrett, Inc.* 618 S.W.2d 535, 539 (Tex. 1981); *Riverside National Bank v. Lewis,* 603 S.W.2d 169, 173 (Tex.1980). The Texas courts have held that insurance is a "service" within the meaning of the Act. *McNeill v. McDaniel Insurance Agency,* 594 S.W.2d 198, 202 (Tex.Civ.App.—Fort Worth, 1980, no writ); *Dairyland County Mutual Insurance Co. v. Harrison,* 578 S.W.2d 186, 190 (Tex.Civ.App.—Houston [14th Dist.] 1979, no writ.)

## A. Texas Consumer Deceptive Trade Practices Act, Article 17.46(b)(5), (7), and (9)

■ This court cannot say as a matter of law that PMMI's representations and advertising concerning its loss prevention services did or did not constitute deceptive trade practices pursuant to subdivisions (5),

---

(23) the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

. . . . .

**6.** Tex.Ins.Code Ann. § 21.21(4)(1) (Vernon 1981) states:

Sec. 4. The following are hereby defined as unfair methods of competition and unfair and deceptive acts or practices in the business of insurance:

(1) Misrepresentations and False Advertising of Policy Contracts. Making, issuing, circulating, or causing to be made, issued or circulated, any estimate, illustration, circular or statement misrepresenting the terms of any policy issued or to be issued or the benefits or advantages promised thereby or the dividends or share of the surplus to be received thereon, or making any false or misleading statements as to the dividends or share of surplus previously paid on similar policies, or making any misleading representation or any misrepresentation as to the financial condition of any insurer, or as to the legal reserve system upon which any life insurer operates, or using any name or title of any policy or class of policies misrepresenting the true nature thereof, or making any misrepresentation to any policyholder insured in any company for the purpose of inducing or tending to induce such policyholder to lapse, forfeit, or surrender his insurance;

§ 21.21(4)(2) states:

(2) False Information and Advertising Generally. Making, publishing, disseminating, circulating or placing before the public, or causing, directly or indirectly, to be made, published,

disseminated, circulated, or placed before the public, in a newspaper, magazine or other publication, or in the form of a notice, circular, pamphlet, letter or poster, or over any radio or television station, or in any other way, an advertisement, announcement or statement containing any assertion, representation or statement with respect to the business of insurance or with respect to any person in the conduct of his insurance business, which is untrue, deceptive or misleading;

**7.** Tex.Ins.Code Ann. § 21.21(16)(a) (Vernon 1981) provides in part:

Any person who has been injured by another's engaging in any of the practices listed in Section 4 of this article . . . may maintain an action against the company or companies engaging in such acts or practices.

**8.** Tex.Bus. & Com.Code Ann. § 17.50(a)(4) (Vernon 1968 & 1981 Supp.) provides:

A consumer may maintain an action when any of the following constitute a producing cause of actual damages:

. . . . .

(4) The use or employment by any person of an act or practice in violation of article 21.21, Texas Insurance Code as amended. . . .

**9.** Tex.Bus. & Com.Code Ann. § 17.50(a)(1) (Vernon 1968 & 1981 Supp.) provides:

A consumer may maintain an action where any of the following constitute a producing cause of actual damages:

(1) The use or employment by any person of a false, misleading, or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (6) of Section 17.46 of this Subchapter.

(7), and (9) of Section 17.46(b). Therefore, neither plaintiff nor defendant is entitled to summary judgment; these questions are a matter of factual dispute.

### B. Texas Consumer Deceptive Trade Practices Act, Article 17.46(b)(11)

Since defendant has not substantiated its contention of a violation of this section, and this court fails to see the connection between this statutory provision and the present case, plaintiff is granted summary judgment on this issue.

### C. Texas Consumer Deceptive Trade Practice Act, Article 17.46(b)(12)

This court finds that there was no misrepresentation made concerning a duty to provide defendant with safety inspection services. Therefore, any extrinsic evidence that would serve to vary or contradict the terms of the written agreement is barred by the Texas parole evidence rule. *See, Anthony Industries, Inc. v. Ragsdale, et ux.,* 643 S.W.2d 167, 171–173 (Tex.Ct.App.—Fort Worth 1982). For this reason plaintiff is granted summary judgment under this section.

### D. Texas Consumer Deceptive Trade Practices Act, Article 17.46(b)(23)

Gulf Forge has not made the court aware of any information that PMMI allegedly failed to disclose. Therefore, plaintiff is granted summary judgment on this issue.

### E. Texas Insurance Code, Article 21.21(4)(1), and (2).

■ Plaintiff has not carried its burden of showing that it is entitled to summary judgment on these statutory provisions. This court cannot say as a matter of law that PMMI did not engage in misrepresentation and false advertising of its loss prevention service, and this question is appropriate for submission to a jury.

10. Although defendant cites language from both sections 323 and 324(a) of the Restatement (Second) of Torts, only the former is applicable to the instant case since 324(a) deals with liability to a third party, which is not at issue here. Section 324(a) provides in part:

### IV. IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

■ While there is a paucity of Texas case law in this area, this court is not persuaded by plaintiff's argument that Texas courts, given a certain set of circumstances, would not recognize such an implied covenant of good faith and fair dealing in a first party insurance situation. *See Standard Fire Insurance Co. v. Fraiman,* 588 S.W.2d 681 (Tex.Civ.App.—Houston (145th Dist.) 1979, no writ). However, even if it is assumed that the doctrine of the implied covenant of good faith is applicable to this case, it is clear from the facts that as a matter of law plaintiff's conduct in investigating and processing Gulf Forge's claim was not such as to constitute bad faith. Accordingly, PMMI is granted summary judgment on this issue.

### V. NEGLIGENT INSPECTION

As previously discussed, this court has found that PMMI had no duty to inspect Gulf Forge's boilers under contract theories or promissory estoppel. It remains for this court to determine whether under common law tort principles a legal relationship between the parties existed that would give rise to a duty on the part of PMMI to provide boiler inspection services such that a negligent inspection, if such negligence occurred, would be actionable.

### A. RESTATEMENT (SECOND) OF TORTS

■ Section 323 of the Restatement (Second) of Torts has been adopted by the Texas Courts. *Bernard Johnson v. Continental Constructors,* 630 S.W.2d 365, 374–5 (Tex.App.—Austin 1982, ref'd n.r.e.).[10] Under this section it is possible for one to incur a duty of care in certain circumstances toward another merely by virtue by an af-

One who undertakes, gratuitously or for consideration, to render services for another which he should recognize as necessary for the protection of a third person or his things is subject to liability to the third person . . . .

firmative undertaking.[11] However, for a cause of action for negligence to be sustained on the basis of this restatement section, the Texas Supreme Court requires the "undertaking" to be an affirmative action to render service for another for the sole purpose of benefiting the one injured. *Colonial Savings Association v. Taylor*, 544 S.W.2d 116 (Tex.1976); *See also Smith v. Allendale Mutual Insurance Co.*, 410 Mich. 685, 303 N.W.2d 702 (1981).

■ In the instant case, the clear import of the policy provisions pertaining to inspections, and the language contained in the inspection reports expressly negate any indication that the insurer intended to act for the benefit of Gulf Forge. The evidence in this case establishes no other reason for PMMI's inspections other than to provide PMMI with information to minimize its own risk as insurer. Although incidental benefits inured to Gulf Forge, such incidental benefits do not fulfill the requirements of Section 323 of the Restatement as adopted in Texas. Therefore, since evidence that the insurers intended to benefit defendant by their inspection of defendant's boilers is lacking, an essential element of section 323 is missing, and as a matter of law plaintiff is entitled to summary judgment on this issue.

### B. TEXAS COMMON LAW

[12, 13] Texas case law indicates that PMMI would not be exempt from the operation of common law tort principles. *See Bennet v. Span Industries, Inc.*, 628 S.W.2d 470, 473–74 (Tex.App.—Texarkana, 1982, ref'd n.r.e.). The absence of a pre-existing legal relationship based on contract or some other theory does not obviate one's responsibility to exercise reasonable care in one's conduct toward others. *Id.* at 474. PMMI's duty toward Gulf Forge was that of ordinary prudence under the circumstances con-

sidering the foreseeable risk. W. Prosser, Torts § 58 (4th ed. 1971). However, any liability on the part of PMMI for negligence must flow from affirmative conduct which creates or augments the risk of harm. *Id.* at 473; *Roberson v. McCarthy*, 620 S.W.2d 912, 914 (Tex.Civ.App.1981—Corpus Christi 1981, writ ref'd n.r.e.); *Buchanan v. Rose*, 138 Tex. 390, 159 S.W.2d 109 (1942); *Smith v. Allendale Mutual Insurance Co.*, 410 Mich. 685, 303 N.W.2d 702, 711 n. 6 (1981).

■ In *Roberson* the plaintiff, Mrs. Roberson, sued defendants for the wrongful death of her husband. Decedent, unaware that a bridge over a canal ditch had been destroyed by fire, had driven his truck into the open ditch and had died as a result of injuries sustained in the accident. Defendants had learned of the condition of the bridge the day before decedent's accident; one told a third party he would notify authorities, which he did not do, while the other abandoned his effort to contact authorities after an unsuccessful first attempt. Plaintiff, admitted that defendants initially had no duty to warn passers-by, including her husband, of the danger, but asserted that defendants had assumed such a duty when they undertook to inform the proper authorities and that having performed this duty with a lack of ordinary prudence, were liable for negligence. The district court's summary judgment for defendants was affirmed by the appellate court. The appellate court distinguished between an actor and a bystander and classified defendants as the latter, because they had done nothing to *create* the dangerous situation (emphasis added.) The court quoted *Buchanan, supra* for the rule that a "bystander who did not create a danger is not required to become the good Samaritan and prevent injury to others." *Id.* at 914. While factually distinguishable from the present case, the import of *Roberson* and

---

11. Section 323 of Restatement (Second) of Torts states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm

resulting from his failure to exercise reasonable care to perform his undertaking, if
    (a) his failure to exercise such care increases the risk of such harm, or
    (b) the harm is suffered because of the other's reliance upon the undertaking.

other Texas cases is that, while the Texas courts recognize a negligence cause of action based on an undertaking to render service to another where there is no pre-existing duty, they have fairly stringent requirements as to when one will be deemed to have a duty in tort to another. Texas law does not sanction generosity in the handing out of such duties.

■ In the case *sub judice* defendant Gulf Forge has not carried its burden of showing how PMMI created or enlarged the risk of the boiler explosion. The PMMI inspector merely inspected the machinery and did nothing to alter its condition. *See Bennet v. Span Industries, Inc.,* 628 S.W.2d at 473 (Tex.Civ.App.—Texarkana 1982, ref'd n.r.e.). Thus, PMMI must be classified as a bystander rather than an actor. This view is strengthened by plaintiff's unambiguous statements in both its insurance policy and inspection reports that it was not assuming any duty toward Gulf Forge for maintaining the safety of its boilers and that defendant was not to rely on PMMI's inspections for the upkeep of the plant's machinery.

Therefore, this court concludes that as a matter of law, there is no negligence cause of action against PMMI upon which relief may be granted and PMMI is entitled to summary judgment on this question.

## IV. CONCLUSION

In further proceedings on the issues that have not been resolved by this summary judgment order, the parties should keep in mind that this court has found that under *no* legal theory, including those based on the DTPA & Texas Insurance Code, did PMMI owe Gulf Forge a duty to provide safety inspection services.

Accordingly, it is ADJUDGED, DECREED, and ORDERED that defendant's motion for partial summary judgment be, and the same is DENIED. Plaintiff's motion for summary judgment is granted in part and denied in part. Specifically, it is ADJUDGED, DECREED, and ORDERED that plaintiff's motion for summary judgment on defendant's breach of contract,

promissory estoppel, breach of implied covenant of good faith and fair dealing, and negligent inspection claims, and the DTPA, Tex.Bus. & Com.Code Ann. art. 17.46(b)(11), (12), (23) be, and the same is, GRANTED. Plaintiff's motion for summary judgment on DTPA, Tex.Bus. & Com.Code, art. 17.-46(b)(5), (7), (9) and Tex.Ins.Code. art. 21.-21(4)(1), (2) be, and the same is, DENIED.