**Willie Rhoneta SEAY, Individually and as Administratrix of the Estate of Jack Lewis Seay, Appellant,**

v.

**The TRAVELERS INDEMNITY COMPANY, Appellee.**

No. 05–86–00307–CV.

Court of Appeals of Texas, Dallas.

April 9, 1987.

Rehearing Denied June 1, 1987.

Morton A. Rudberg, John M. Weaver (Houston Gen. Ins. Co.), Dallas, for appellant.

Timothy R. McCormick, Arthur K. Smith, Dallas, for appellee.

Before DEVANY, McCLUNG and THOMAS, JJ.

THOMAS, Justice.

This is an appeal from the granting of summary judgment in favor of the TRAVELERS INDEMNITY, CO. (Travelers). Appellant, WILLIE RHONETA SEAY, brings forth three points of error: (1) that the granting of summary judgment for Travelers was error because Travelers failed to establish as a matter of law that no legal duty existed as to its allegedly negligent actions; (2) that the granting of summary judgment was error because Travelers failed to establish as a matter of law that TEX.R.CIV.P. 51 bars a suit such as this; and (3) that the trial court erred in granting Travelers' motion for summary judgment. We agree, and therefore, reverse the judgment and remand the matter to the trial court for further proceedings.

Mrs. Seay is the surviving widow of the decedent, Jack Seay. Mr. Seay was a maintenance employee of Gaston Episcopal Hospital (Gaston). On October 21, 1979, Mr. Seay and another employee were performing maintenance work on one of the boilers located in the boiler room of Gaston when a safety relief valve on an adjacent boiler discharged scalding water onto Mr. Seay. Six days later, Mr. Seay died of these injuries.

Mr. Seay's wife and children then brought suit against Travelers, alleging that Travelers had negligently inspected the boiler which injured Mr. Seay and, as a result of the negligent inspection, Mr. Seay had been injured. Travelers moved for summary judgment on two separate grounds: (1) that as a matter of law, it had no duty toward Mr. Seay which could form the basis of a cause of action; and (2) that TEX.R.CIV.P. 51, as a matter of law, barred the suit. The trial court judge, in granting the motion for summary judgment, found there were no genuine issues of material fact and that Travelers was entitled to judgment as a matter of law.

The crucial issue raised by this appeal is whether Texas recognizes a duty flowing from an insurance company, which voluntarily conducts inspections of the water boilers of its insured, to employees of the insured and, if so, whether the plaintiff in this suit has raised issues of fact regarding breach of that duty. We hold that Texas recognizes such a duty and that plaintiff has raised issues of fact regarding a breach of that duty.

The boilers in question were subject to the provisions of the Texas Boiler Inspection Act, TEX.REV.CIV.STAT.ANN. art. 5221c (Vernon Supp.1987) (the Act). They are required to be periodically inspected and certified as a condition to their operation. The inspections are required to be carried out by the Chief Inspector, a Deputy Inspector, or an Authorized Inspector. The Chief and Deputy Inspectors are civil servants employed by the State of Texas and charged with enforcement of the provisions of the Act. Authorized Inspectors are employees of insurance companies that have been commissioned by the Department of Labor and Standards of the State of Texas to inspect boilers. If any Inspector determines that the boiler meets standards promulgated by the Department of Labor and Standards, the Commissioner of that Department issues a "certificate of operation" which allows the boiler to be lawfully used. If the boiler does not meet the standards, the Commissioner may order the owner to repair it, prohibit its use, or, in extreme instances, condemn it.

Travelers insured the boilers used at Gaston. For a number of years, employees of Travelers, as Authorized Inspectors, conducted inspections of those boilers and gave favorable reports to both Gaston and the Commissioner. As a consequence of the favorable reports, the Commissioner periodically issued new "certificates of operation" which allowed Gaston to continue to use the boilers.

Mrs. Seay contends that, as a result of undertaking to inspect the boilers, Travelers owed a duty to Mr. Seay pursuant to the common law and the RESTATEMENT (SECOND) OF TORTS § 324A (1977). That section states:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third per-

son or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

(a) his failure to exercise reasonable care increases the risk of harm, or

(b) he has undertaken to perform a duty owed by the other to the third person, or

(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Mrs. Seay alleged no theory of recovery other than that sounding in tort; therefore, the lack of a duty owed by Travelers to Mr. Seay would preclude Appellant's recovery, and the granting of summary judgment would be proper. *Mercola v. City of San Antonio,* 487 S.W.2d 763, 764 (Tex.Civ. App.—Beaumont 1972, writ ref'd n.r.e.). Conversely, if a duty is owed, then the burdens cast upon a defendant moving for summary judgment in a personal injury case based on negligence will ordinarily make such a motion futile. *Taylor v. Southwestern Bell Telephone Co.,* 483 S.W.2d 330, 332 (Tex.Civ.App.—El Paso 1972, no writ).

Travelers argues that it had no duty toward Mr. Seay because section 324A is contrary to public policy and is not the law of Texas. Travelers further argues that even if section 324A is the law of Texas, the evidence in this case disproves issues of fact under one or more elements of section 324A. We do not agree.

■ Initially, we address the argument of Travelers that section 324A is not the law of Texas. Although no holding of a Texas court has explicitly adopted section 324A, it is apparent that this section describes the scope of the duty concept prevailing in this state. The rule underlying section 324A was adopted by the Supreme Court of Texas in *Fox v. Dallas Hotel Company,* 111 Tex. 461, 240 S.W. 517, 520–21 (1922). In that case, the defendant, Dallas Hotel Company, had entered into a contract with decedent's employer to maintain and repair elevators in a building which was under the control of the employer. As a result of negligent maintenance

and repair, plaintiffs' decedent was killed by an elevator in the building. The Supreme Court held that Dallas Hotel was liable in tort, stating that,

"Upon defendant in error taking over the control and repair of the elevators ... it became charged with the duty ... to exercise ordinary care...."

240 S.W. at 520. The Court's discussion makes clear that the basis of liability, like that of section 324A, accrues when the tortfeasor undertakes to perform services for another which are "attended by grave risks" and which constitute a duty owed by the other to a third person.

■ Further, the Texas Supreme Court has adopted section 323 of the Restatement as the law of Texas. *Colonial Savings Association v. Taylor,* 544 S.W.2d 116, 120 (Tex.1976). Section 323 is identical to section 324A except that the duty delineated in section 323 extends to the person for whom the services were rendered rather than to the third party described in section 324A. This distinction will not impede recognition of section 324A as law inasmuch as Texas courts have repeatedly recognized that existence of a duty will not be defeated by the fact that the duty is claimed by a third party not in privity with the transaction giving rise to the tort. A subcontractor performing dirt grading services for a general contractor that was resurfacing a road owed a duty in tort to a passing motorist despite absence of privity. *Strakos v. Gehring,* 360 S.W.2d 787, 796 (Tex.1962). A manufacturer owed a duty in tort to innocent bystanding third parties despite absence of privity. *Darryl v. Ford Motor Company,* 440 S.W.2d 630, 633 (Tex.1969). Accountants owed a duty in tort to third parties despite absence of privity. *Blue Bell, Inc. v. Peat, Marwick, Mitchell and Co.,* 715 S.W.2d 408, 411 (Tex.App.—Dallas 1986, writ ref'd n.r.e.); *Shatterproof Glass Corp. v. James,* 466 S.W.2d 873, 880 (Tex. Civ.App.—Ft. Worth 1971, writ ref'd n.r.e.) (citing Restatement section 552). A surveyor owed a duty in tort to third parties despite absence of privity. *Cook Consultants, Inc. v. Larson,* 700 S.W.2d 231, 234 (Tex.App.—Dallas 1985, writ ref'd n.r.e.)

(citing Restatement of Torts section 552). The operator of a grain elevator owed a duty in tort to all third parties in the public. *Goodpasture, Inc. v. Hosch*, 568 S.W.2d 662, 665 (Tex.Civ.App.—Houston 1978, writ ref'd n.r.e.).

The adoption of section 323 necessarily implies the validity of section 324A as Texas law. *Johnson v. Abbe Engineering Company*, 749 F.2d 1131, 1132 (5th Cir. 1984); *Canipe v. National Loss Control Service Corporation*, 736 F.2d 1055, 1059 (5th Cir.1984); *City of Denton v. Van Page*, 701 S.W.2d 831, 836 (Tex.1986); *Bernard Johnson, Inc. v. Continental Constructors, Inc.*, 630 S.W.2d 365, 374 (Tex. App.—Austin 1982, writ ref'd n.r.e.); and RESTATEMENT (SECOND) OF TORTS § 324A comment a (1965).

■ Traveler's argument that application of section 324A to create a duty in tort by an insurance company to the employee of its insured as a result of boiler inspections is contrary to the law of Texas, is a reliance in part upon *Philadelphia Manufacturers Mutual Ins. Co. v. Gulf Forge Co.*, 555 F.Supp. 519, 526 (S.D.Tex.1982); and *Brownstone Park, Ltd. v. Southern Union Gas Co.*, 537 S.W.2d 270, 274 (Tex. Civ.App.—Austin 1976, writ ref'd n.r.e.). In *Brownstone*, the owner of an apartment complex had entered into a maintenance and repair contract with Southern Union Gas Company for servicing a boiler in the complex. The owner sued Southern Union alleging negligence in the maintenance of the boiler causing its destruction. Southern Union cross-claimed against Hartford Steam Boiler Inspection and Insurance Company for negligent inspection of the boiler. The jury found no negligence on the part of Hartford and the appellate court refused to overturn this finding, stating that:

> (W)e are at a loss to understand what duty Hartford owed to Southern Union Gas Company, or even to Brownstone Park. Its voluntary inspection of the boiler was for the purpose of determining its insurability and, as such, was for the benefit of Hartford only ... Any authority (the Hartford inspector) had

was as an agent for the State and any duty he owed was to the State, not to Southern Union Gas.

537 S.W.2d 274. We are not inclined to consider *Brownstone* as compelling authority under the facts of this case. Under the maintenance and repair contract, Southern Union agreed to bear "sole responsibility for servicing and maintaining (Brownstone's) boiler, and ... furnished trained, experienced servicemen for this purpose." 537 S.W.2d at 273. The *Brownstone* court addressed the issue of whether a boiler owner's insuror, by virtue of conducting boiler inspections, owes a duty to such an independent third party contractor. The issue before us is whether an inspecting insuror owes a duty to the employee of its insured *in the absence of* any expert third party contractor. Further, inasmuch as the point of error in *Brownstone* was raised by Southern Union against Hartford, any comments on the relationship between Hartford and Brownstone are dicta which do not bind us. *State ex rel. Childress v. School Trustees of Shelby County*, 150 Tex. 283, 239 S.W.2d 777, 782 (1951). Since we distinguish *Brownstone* on its facts, we are not persuaded that the holding is dispositive of the relationship between the parties in this case. We further note that the *Brownstone* court did not discuss section 324A, and the facts necessary to a section 324A analysis are missing in that case.

Likewise, we decline to follow *Gulf Forge* and instead look to *Abbe Engineering, supra*, which interpreted section 324A as creating a duty on the part of an inspector to the employees of the party for whom the inspection was made. 749 F.2d at 1133.

Since we hold that section 324A accurately describes the scope of the duty owed by one undertaking a task necessary to the protection of a third person, and that the rule stated therein is the law in the State of Texas, we now consider whether Travelers has failed to disprove one or more of the essential elements of Mrs. Seay's cause of action under section 324A. If so, the trial court erred in granting summary judgment. *Buddy "L," Inc. v. General Trailer*

*Company, Inc.*, 672 S.W.2d 541, 546 (Tex. App.—Dallas 1984, writ ref'd n.r.e.).

In determining whether the factual proof offered by Travelers was sufficient as a basis for summary judgment, the question is whether the proof *establishes as a matter of law that there is no genuine issue of material fact* as to one of more of the essential elements of plaintiff's cause of action under section 324A. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970) (emphasis added). The law is well established that the burden of proof is on the movant and all doubts as to the existence of a genuine issue of material fact are resolved against him. *Oakes v. Aetna Casualty & Surety Co.*, 551 S.W.2d 504, 505 (Tex.Civ.App.—Amarillo 1977, writ ref'd n.r.e.). In reviewing the evidence, all conflicts are disregarded, and the evidence which tends to support the position of the party opposing the motion is accepted as true. *Farley v. Prudential Insurance Company*, 480 S.W.2d 176, 178 (Tex.1972). Further, every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589, 593 (Tex.1975).

In order to establish liability under section 324A, Mrs. Seay must first show that Travelers undertook to render services to Gaston and then must show at least one of the following three things: (1) that the risk of harm to Seay increased due to the failure of Travelers to exercise reasonable care; (2) that Travelers undertook to perform a duty owed to Seay by Gaston; or (3) that the harm suffered by Seay was the result of his reliance or Gaston's reliance on the services rendered to Gaston by Travelers.

■ Travelers contends that, as a matter of law, the uncontroverted facts show that it did not undertake to render services to decedent's employer, Gaston. Travelers argues that, accordingly, the proof establishes no genuine issue of fact regarding this threshold issue under section 324A. It is argued that the inspections of Gaston's boilers were for the sole purpose of evaluating the boilers as an insurable risk and

for determining whether the boilers complied with the standards of the Act. With regard to the first purpose, Travelers claims it was rendering a service for itself, and with regard to the second purpose, it was rendering a service for the State.

The record raises a fact issue with respect to the contention that the sole purpose for inspecting the boilers was to evaluate them as insurable risks. In the affidavit submitted in support of Travelers' motion for summary judgment, the affiant stated that "The Travelers ..., for the purpose of determining the insurability of the boiler, conducted the biennial inspection ...". This does not say that the *sole* purpose of the inspections was to determine insurability. A reasonable inference is that, had Travelers intended *only* to determine insurability, the summary judgment proof submitted in support of that contention would have clearly stated that that was the *sole* purpose. The inspection reports themselves, submitted on forms drafted and printed by Travelers, stated that:

> Inspections and recommendations made by The Travelers, are advisory *and designed to assist insureds* in the establishment and maintenance of their own *safety activities.*

Further, the manual drafted, printed, and issued by Travelers for its Authorized Inspectors states that "*Code violations must be brought to the attention of the insured when they are discovered....*" (Emphasis supplied). Finally, the deposition of Krishan Kumar Mehta, safety engineer for Travelers, contains the following testimony:

Q. Have you had occasion to inspect the boilers at the Gaston Hospital?

A. Yes, sir.

Q. And after you look into these various areas, what do you do?

A. After visiting the place, if there are any recommendations, we sit down with the management and discuss these recommendations, and then we come back to the office and confirm it in a letter for them.

Q. And by recommendations, I assume that you mean to have a safer work place for the individuals working there?

A. Yes. If there are any things which we feel is unsafe and could cause an injury, we would point that out to the management of the property. I also hold a CSP as a Certified Safety Professional.

Whatever the *motive* may have been for Travelers to conduct these inspections, it is clear that one *purpose* of them was to increase the safety of boilers for those employees of its insureds who, like the decedent, worked near them.

The summary judgment evidence likewise fails to prove as a matter of law Travelers' contention that the only secondary purpose of the inspections was to determine if the boilers complied with the standards of the Act. Travelers maintains that the inspections served only to determine whether the boiler in issue met certain criteria and not to determine whether the boiler was safe. This argument raises an issue of fact since the Act provides:

If such boilers referred to herein are found, upon inspection, to be in a *safe condition for operation,* a Certificate of Operation shall be issued.... If any inspection authorized hereunder shall show the inspected boiler to be in an *unsafe or dangerous condition,* the Chief Inspector ... shall issue a preliminary order *requiring such repairs and alterations* to be made to such boiler *as may be necessary to render it safe* for use, and may also order the use of such boiler discontinued until such repairs and alterations are made or such dangerous and unsafe conditions are remedied.... *Any boiler which cannot be rendered safe* for use *shall be condemned* and the use of such boiler shall be prohibited.

TEX.REV.CIV.STAT.ANN. art. 5221c § 4 (Vernon Supp.1987) (Emphasis added).

The purpose of an inspection under the Act is not to determine whether the boiler meets some abstract standard of efficient operation or some collateral standard relating to its capacity to cause pollution. The inspection is concerned with the safety of continued operation of the inspected boiler.

Gaston had an interest in the safe operation of its boilers for several reasons. First, it could not operate the boilers unless they had achieved a degree of safety adequate to meet the requirements of the Act. Second, if the boilers were not safe, Gaston had the potential to damage themselves and adjacent property and to interrupt operating procedures at the hospital. In addition to Gaston's common law duty to provide a safe work place for its employees, it had an interest in avoiding injury to its employees so that they, and their respective skills, would be available for the operation of the hospital. *Farley v. M M Cattle Company,* 529 S.W.2d 751, 754 (Tex.1975). Consequently, when performing inspections pursuant to the Act, Travelers was performing acts which directly promoted the interests of Gaston in the safety of its boilers and thereby was undertaking to render services to Gaston.

It is maintained that provisions of the Boiler and Machinery Policy insuring the Gaston boilers disclaim any undertaking to determine that the boilers are safe. However, the insurance policy was issued by The Travelers Indemnity Company of Rhode Island, while the inspections were performed by the appellee, The Travelers Indemnity Company, a separate and legally distinct entity. Appellee Travelers argues that, since the two companies are subsidiaries, this court should overlook the distinction in legal status and allow Appellee to obtain the advantage of another company's disclaimer. The legally distinct and separate status of two corporations will not be disregarded because they are subsidiaries or because they possess common shareholders or officers. *Mortgage and Trust, Inc. v. Bonner & Company, Inc.,* 572 S.W.2d 344, 348 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Wright Hydraulics, Inc. v. Womack Machine Supply Company,* 482 S.W.2d 34, 36 (Tex.Civ.App.—Fort Worth 1972, no writ). Accordingly, the disclaimer is not available to Appellee to avoid liability herein.

■ Neither side argues that there is any fact issue as to the first element under section 324A; therefore, we must look to

the second and third factors. In connection with the second element, Travelers contends that, with respect to the boiler inspections, Gaston owed no duty to the decedent which Travelers undertook to perform; and that, even had Gaston a duty of care with respect to the inspections, Travelers could not have undertaken to perform that duty. Travelers argues that it had no specific knowledge of any safety standards under the Act; and that the Act does not define any degree of safety to which the boilers were subject, and further that Travelers had no power to enforce Gaston's compliance with the Act. We cannot agree.

The Act clearly contemplates that an entity operating a boiler obtain a "certificate of operation" assuring the safety of the boiler as a predicate to such operation. In order to receive the "certificate," Gaston was obligated to have the boiler inspected. The State Inspectors are not obligated to "make rounds" and uncover boilers in need of inspection. Therefore, since Gaston obtained Travelers to perform the inspection, Travelers performed acts which were required of Gaston under the provisions of the Act designed to promote the safety of boilers. Consequently, the evidence fails to disprove that Travelers was performing a duty of care owed by Gaston to its employees, including the decedent.

Likewise, a fact issue is raised concerning whether the Act defines any degree of safety that the boilers must achieve and whether Travelers had knowledge of specific standards of safety which must be met by a boiler before a "certificate" will issue. In its Answers to Plaintiff's Interrogatories, Travelers admitted that the criteria applicable to inspection were those promulgated by the American Society of Mechanical Engineers. Those standards provide that "The discharge from safety or relief valves shall be arranged so that there will be no danger of scalding attendants." The evidence in this case shows that decedent was killed by scalding water from a safety relief valve that was arranged so that the discharge was sprayed on him as he attended an adjacent boiler. Consequently, the evidence does not dis-

prove a genuine issue of material fact concerning whether there were specific standards of safety, and whether Travelers knew that there was a specific standard applicable to the exact danger which was material to Mrs. Seay's cause of action.

Finally, Travelers did not prove as a matter of law that it had no means of enforcing compliance with the safety standards of the Act. Under the provisions of article 5221c, a report from Travelers that found the safety valves on Gaston's boiler to be dangerous would be expected to initiate enforcement procedures compelling the very repairs and alterations which were actually undertaken by Gaston once the death of Mr. Seay alerted Gaston officials to the danger. At the very least, the evidence does not prove as a matter of law that such an unfavorable report would *not* have resulted in repairs and alterations.

The last argument of Travelers is that inasmuch as Gaston had its own safety programs, it could not have relied upon Travelers' inspection to uncover the danger which resulted in harm to Mr. Seay. In response to the Motion for Summary Judgment of Travelers, Mrs. Seay submitted the Affidavit of Charles M. Cooper, the Administrator of Gaston. That affidavit stated:

[A]s the chief administrative officer of Gaston, I relied upon The Travelers Indemnity Company's inspections of the boilers to determine their condition and to advise us as to the condition and if we should make changes or modifications. Certainly, if we had been told by the inspectors that a risk to our personnel existed and that we should vent, pipe or otherwise modify the discharges from the safety relief valves on the low-pressure steam boilers, I would have complied and had authority to do so.

This testimony is sufficient to preclude a ruling, that as a matter of law, Gaston did not rely on Travelers' inspections.

The summary judgment evidence failed to demonstrate that there was no genuine issue of material fact as to any of the elements of Mrs. Seay's cause of action.

Travelers further argued that TEX.R. CIV.P. 51 bars a suit such as Mrs. Seay's. This rule states as follows:

> (b) ... This rule shall not be applied in tort cases so as to permit the joinder of a liability or indemnity insurance company, unless such company is by statute or contract directly liable to the person injured or damaged.

In *Russell v. Hartford Casualty Insurance Co.*, 548 S.W.2d 737, 740 (Tex.Civ. App.—Austin 1977, writ ref'd n.r.e.), it was held that this rule only applies to actions in which the negligent conduct is that of an insured. The opinion states in relevant part:

> In Texas, and in most states, the liability insurance company, in absence of a statute or an express provision of the insurance contract, cannot be sued directly in a tort suit with or without joinder of the insured. [Cite omitted]. That rule is expressed in TEX.R.CIV.P. 51(b) and other rules.

*Id.* at 740. This case is beyond the rule's application since Mrs. Seay is seeking to recover for the conduct of the insurance company itself, acting through its agents and employees.

For all of the above reasons, we hold that the granting of summary judgment was improper. Therefore, the cause is reversed and remanded for proceedings in accordance herewith.

Reversed and Remanded.

DEVANY, J., concurs with an opinion.

DEVANY, Justice, concurring.

I concur only in the result. The majority has gone too far in adopting section 324A of The Restatement (Second) of Torts (1965), because the facts in this case do not require that we adopt a rule broader in scope than is necessary.

Under the instant facts, Travelers may have assumed a duty to decedent, along with any others who might come into the boiler room, when it issued the Certificate of Operation for the State of Texas pursuant to article 5221c. TEX.REV.CIV.STAT. ANN. art. 5221c (Vernon Supp.1987). If Travelers did assume such a duty, then it would have to use ordinary care in inspecting the boilers and certifying them. I recognize that it is not necessary to prove that a legal relationship existed between the parties before one may be charged with a duty of care toward the other. In *Bennett v. Span Industries, Inc.*, 628 S.W.2d 470 (Tex.App.—Texarkana 1981, writ ref'd n.r. e.), the court held that a subcontractor which built a roof containing skylights had a duty of care to a later workman who fell through one of the skylights due to a lack of safeguards. The court stated:

> There was no special *legal relationship* between Span [the subcontractor] and Bennett [the workman] which would in itself bring him within the scope of Span's duty, but the duty of ordinary care at common law may arise not only as a matter of legal relation, but it may also arise from a knowledge of the danger, which in turn depends upon the probability of injury. Prosser on Torts §§ 53 and 54, pp. 324, et seq. (4th ed. 1971); 57 Am.Jur.2d *Negligence* § 36, p. 382, 383 (1971). Whether or not there is a pre-existing privity in legal relationship between the actor and the person injured, if the circumstances are such that a person of ordinary common sense would recognize that if he did not exercise reasonable care in his conduct with regard to those circumstances, his acts would place another person in danger, the duty to use ordinary care to avoid such danger arises. 57 Am.Jur.2d *Negligence* § 37, pp. 384, 385; § 57, p. 407, and cases cited. As Dean Prosser noted, the concept of duty has expanded to the point that in many cases, the mere knowledge of serious danger threatening physical harm to another, which one may avoid with little inconvenience, creates a *sufficient relation*, recognized by every moral and social standard, to impose a duty of care. Prosser on Torts § 56, p. 343 (4th ed. 1971).

628 S.W.2d at 473–74. (Emphasis in original.)

Since Travelers may have assumed such a duty to decedent, summary judgment was inappropriate because issues of fact remain as to whether Travelers failed to follow proper boiler inspection standards, and, if so, whether such a failure was a proximate cause of decedent's injuries.

I am unwilling to adopt Section 324A as the law of Texas. While the facts in this case, and in other cases, may lead to a result that is consistent with a portion of Section 324A, I am not willing to hold that Section 324A in its entirety is the law for *all* fact situations which may arise under its terms.

Therefore, I concur only with the majority's result. For these reasons, I would remand for a trial on the merits.