PÀRKING, INC., Appellant,

v.

Clyde DALRYMPLE et ux., Appellees.

No. 14202.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 29, 1964.

Rehearing Denied Feb. 26, 1964.

Matthews, Nowlin, Macfarlane & Barrett, James D. Baskin, Jr., San Antonio, for appellant.

Rudy Rice, San Antonio, Walter L. Tandy, Waco, for appellees.

BARROW, Justice.

This suit was filed by appellees, Clyde Dalrymple and wife, Edith Dalrymple, parents and legal representatives and as next friend of their deceased minor son, Danny Dalrymple, to recover damages for personal injuries to and the death of Danny, from Parking, Inc., Zaragosa Amusement Company, and the City of San Antonio. Danny is alleged to have fallen into the San Pedro Creek from a public parking lot operated by Parking, Inc., and drowned on July 22, 1961. The City was granted an instructed verdict. Judgment was rendered on a jury verdict against Parking, Inc., for $1,295.00 for funeral expenses, $5,000.00 for loss sustained by the parents as a result of the death of Danny, and $10,000 for pain and mental anguish suffered by Danny. A take-nothing judgment was entered as to the Zaragosa Company. Only Parking, Inc., has perfected this appeal.

The cause of action arose from an unusual factual situation which is accentuated by appellees' lack of direct evidence. On July 22, 1961, Zaragosa Amusement Company owned two tracts of land located at the southwest corner of the intersection of Houston and Camaron Streets in the City of San Antonio. The tract closest to the intersection had been leased, for many years, to appellant who had constructed and operated a public parking lot on it. This tract was about seventy-five feet wide on Houston Street and about two hundred and twenty-five feet deep. Zaragosa Company operated the Alameda Theatre on the tract to the west of the parking lot, but these two tracts were separated by the San Pedro Creek, which flows from north to south in an artificial creek bed created by eighteen-inch concrete retaining walls, about ten to fifteen feet deep and about twenty feet wide, along the east-west division of appellant's parking lot from the theatre property.

In 1947 Zaragosa erected a new theatre building, and at that time secured permission from the City to construct a sidewalk on the east side of its building by erecting it ten feet over the creek bed. This sidewalk is 155 feet long, and at the south end there is a footbridge extending over the creek to the parking lot. Another footbridge is located at the north end of these tracts, as a part of the sidewalk along the south side of Houston Street. With the exception of these two bridges, about ten feet of the creek bed is open between these two tracts.

The parking lot was designed and operated by appellant in the following manner: telephone poles were placed on the ground along the west property line, and the rear wheels of cars were backed up to them; there were spaces for a double row of cars on the west side of the lot, separated by a drive-way in the center, and then parking spaces for a single row of cars along the east line; a small attendant's shack was placed in the seventh space south of Houston Street and about twenty-five feet west of the creek; there was no fence or other barrier along the west property line, and when rear wheels were backed up to the post about two or three feet of the car extended out over the creek bed; there were no exits specifically designated for pedestrians.

Appellees asserted that on this occasion Danny and his uncle, B. J. Dalrymple, had parked on the lot prior to 7:45 p. m., with the intention of going to the theatre. A hard rain was falling, and it is asserted that Danny and his uncle, in attempting to run from the parking lot to the theatre, did not see the creek and both fell into it.

The jury's verdict, as pertinent to this appeal, is substantially as follows: (1) Danny went into the creek from the parking lot east of the theatre; (2) appellant negligently failed to place a barricade, railing, fence or other device along the creek, and this was a proximate cause of the accident; (8) the sidewalk lights operated by Zaragosa Company on the west side of the creek created an appearance of a walkway east of the lights, but Zaragosa was not negligent in maintaining and operating the lights; (11) appellant negligently parked the cars so as to obstruct the view of the creek, and this was a proximate cause of the death of Danny; (14) the creek under circumstances existing at the time of the accident constituted a dangerous and hazardous condition to persons using the parking lot; (15) appellant knew, or should have known, of this condition and negligently failed to warn deceased of same, which negligence was a proximate cause of the accident; (19) Zaragosa should have known of the hazardous and dangerous condition, but was not negligent in failing to warn deceased; (23) Danny did not fail to keep a proper lookout; (25) Danny's failure to use the Houston Street exit from the parking lot was not negligence; and (29) the death of Danny was not the result of an unavoidable accident.

Appellant asserts four assignments of error; (1) that as a matter of law appellant violated no duty to deceased on the occasion in question; (2) that the death of deceased was not foreseeable and therefore appellant is not liable; (3) that the trial court erred in admitting hearsay testimony; (4) that the jury's finding of $10,000 damages for Danny's pain and mental anguish has no support in the evidence.

There is no direct evidence of Danny's fall into the creek. Danny, age 16, and his adult uncle, B. J. Dalrymple, had come to San Antonio from their home in Waco to visit Danny's brother who was in the Air Force and stationed near San Antonio. Danny's body was recovered two days later, about ten or twelve miles downstream. B. J. was rescued by unidentified persons on a bridge two blocks south of appellant's lot. B. J. was subsequently killed in a truck accident, after this suit was filed, but before the taking of his deposition. The parking lot attendant, Leon Salazar, denied seeing anyone fall in the creek. He testified that B. J. parked his car on the east side of the lot, and, after waiting in the car about thirty minutes for the rain to let up, came to the attendant's shack, paid the fee, and then started running towards Houston Street. Salazar was facing south and did not see B. J. after he left the shack. Salazar denied that anyone was with B. J., although, on cross-examination, he used plural terms, such as "they" in describing the actions of B. J. B. J.'s car was found on the lot the next morning by Danny's father.

The trial court permitted, over appellant's objections, B. J.'s story to be told as

related by him to a San Antonio Police Patrolman, Ronald Mullen, an ambulance operator, Frank Cortez, and Danny's father, Clyde Dalrymple. Appellees urge that this evidence is admissible under the res gestae exception to the hearsay rule.

It is well settled that the death or unavailability for other reasons of the declarant will not render hearsay evidence admissible. The decision as to whether the statement was res gestae does not depend on the after effect of the declarant's death. It was either res gestae or not at the time that it was uttered. Truck Ins. Exchange v. Michling, Tex., 364 S.W.2d 172; Pacific Mutual Life Ins. Co. of Cal. v. Schlakzug, 143 Tex. 264, 183 S.W.2d 709; Texas Law of Evidence, McCormick & Ray, § 783.

The res gestae exception to the hearsay rule was reviewed recently by the Supreme Court in Truck Ins. Exchange v. Michling, supra, and no useful purpose would be gained by restating the requirements for admissibility. Suffice it to say, a hearsay statement as res gestae is admitted as an exception to the hearsay rule, because it is made under circumstances which raise a reasonable presumption that it is the spontaneous utterance of thought created by or springing out of the occurrence itself, and, so to speak, becomes a part of the occurrence. Knapik v. Edison Bros. Inc., Tex.Civ.App., 313 S.W.2d 335. The burden is upon the party seeking to offer the hearsay evidence to clearly show that it is admissible as an exception to the general rule. Skillern & Sons, Inc. v. Rosen, Tex., 359 S.W.2d 298. It is generally held that the trial court has considerable discretion in passing upon the admissibility of a statement offered as a part of the res gestae.

Officer Mullen testified that he was patrolling the downtown area when he was notified that someone had fallen into the creek. He arrived at the Dolorosa Street bridge after B. J. had been rescued and talked to him in the patrol car while waiting for an ambulance to arrive. About two hours later, Officer Mullen went to the hospital and got the "whole story" from B. J. No further circumstances concerning the first conversation were shown, and it was not shown what the officer learned in that conversation, or what was learned from the whole story. Officer Mullen testified that B. J. related the following: Danny and B. J. parked at this lot to go to the theatre, but sat in the car for some time because of the heavy rain; they decided to make a run for the theatre, paid the attendant, and ran across the parking lot; they jumped the telephone pole and fell into the creek which looked like a walkway; both caught onto the Commerce Street bridge (one block south of the lot), but Danny was unable to hold on and was last seen going down the creek with his head bobbing in the water.

Frank Cortez, who operates an ambulance service, testified, that he went to the Dolorosa Street bridge about 8:00 p. m. in response to an emergency call from the fire department to pick up a man who had been pulled from the creek; he took B. J. to the hospital and stayed with him until about 10:00 p. m.; after about 45 minutes he interviewed B. J. and learned the following: B. J. and Danny were strangers in San Antonio, and they decided to go to the theatre; they parked in a lot east of the theatre, paid the parking fee, and since it was raining they started running toward the theatre building and fell in the creek; B. J. caught the Commerce Street bridge and held Danny until the water broke his grip and Danny was washed down the creek.

Clyde Dalrymple testified that he was notified in Waco about 9:00 p. m. of the accident, and he and other relatives drove to San Antonio. Upon arrival, they were unable to talk to B. J. until about 2:00 A.M. Later that morning he went to the scene with B. J. and B. J. reenacted the accident. Clyde testified as follows: B. J. said that he and Danny waited in his car on the parking lot until the rain slackened;

they paid the parking fee at the attendant's shack and ran towards an overhang on the north-east wall of the theatre; B. J. said they fell in the creek before they passed the rear of the parked cars.

It is apparent that the hearsay statements made by B. J. in the interviews at the hospital with Officer Mullen, Frank Cortez and Clyde Dalrymple, from one to seven hours after the occurrence do not meet the requirements for admissibility as a part of the res gestae. Insofar as the interview with Officer Mullen at the scene of B. J.'s rescue, proper predicate was not laid to show that these declarations were admissible as res gestae. It is our opinion, therefore, that the trial court erred in admitting this hearsay testimony. There is no question of the prejudicial harm to appellant by the improper admission of this testimony, as there is no other evidence to show that Danny fell from appellant's premises. We can not now say that upon another trial appellees will be unable to lay sufficient predicate for the introduction of the declarations to Officer Mullen at the creek. This error therefore requires a reversal and remand of the case. Rule 434, Texas Rules of Civil Procedure.

Appellant urges that judgment should be rendered because it did not violate any duty it owed to Danny, and the accident was not foreseeable. Under its "no duty" point, appellant questions the legal status of Danny since he was a passenger in the car parked on the lot by his uncle. Appellant asserts that even if Danny were an invitee, there was no invitation for him to leave by the rear of the parked cars when there was a safe way out at either the Houston or Camaron Street exit. Appellant urges that the alleged dangerous condition was not on its premises and was created by the creek which was a natural condition. Finally, appellant says that there was no duty on it to erect a barrier or give warning of the creek.

We have been unable to find a Texas case directly in point, but the general rule is that an invitee of a parking lot includes not only those directly invited to use the premises, but those, such as children, wives, or friends, who might be reasonably expected to accompany the primary invitee. 14 A.L.R.2d 780; Nary v. Parking Authority, etc., 58 N.J.Super. 222, 156 A.2d 42; Goldsmith v. Cody, 351 Mich. 380, 88 N.W.2d 268. This rule would appear to be in harmony with the holding of Carlisle v. J. Weingarten, Inc., 137 Tex. 220, 152 S.W.2d 1073, where a minor child accompanying her mother to a grocery store was held to be an invitee. Our record supports an implied finding that Danny was an invitee on the premises of appellant.

Appellant owed the duty to Danny as an invitee to keep the premises in a reasonably safe condition. This included the duty to inspect and to discover dangerous conditions. Its duty was to protect its invitees from dangers of which it, the occupier knew, or (because of its duty to inspect) should have known, in the exercise of ordinary care. Halepeska v. Callihan Interests, Inc., Tex., 371 S.W.2d 368; Genell, Inc. v. Flynn, 163 Tex. 632, 358 S.W.2d 543; Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391; Smith v. Henger, 148 Tex. 456, 226 S.W.2d 425, 20 A.L.R.2d 853. This duty to keep the premises in a reasonably safe condition was not limited to the parking lot alone, but extended to the entrances and exits from same. Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114; Chapman v. Parking, Inc., Tex.Civ.App., 329 S.W.2d 439.

Here it could be reasonably anticipated that the facilities of the parking lot would be used by persons who were going to the theatre on the adjoining lot. In fact, the sign on attendant's shack advertises free parking for the theatre. There are unattacked findings by the jury that the creek was obstructed by the manner in which appellant parked the cars. This condition was created by the parking of cars so as to extend out over the creek. Under

these circumstances, we cannot say as a matter of law that appellant did not owe its invitees the duty to either erect a barrier or give proper warning of the dangerous condition.

Cases from other jurisdictions have held a breach of duty to invitees in closely related situations. In Falen v. Monessen Amusement Co., 363 Pa. 168, 69 A.2d 65, 14 A.L.R.2d 775 decided by the Supreme Court of Pennsylvania, a woman was injured in leaving a parking lot when she mistook the top of a retaining wall for the curb of a sidewalk and fell. In Great Atlantic & Pacific Tea Co. v. Pederson, 1 Cir., 247 F.2d 4, a man was injured when he fell over a retaining wall into a ramp which ran into the basement of a building adjoining the parking lot. See also, Smigielski v. Nowak, 124 N.J.L. 235, 11 A.2d 251; Underhill v. Shactman, 337 Mass. 730, 151 N.E.2d 287; Goldsmith v. Cody, supra; Gray v. Watson, 54 Ga.App. 885, 189 S.E. 616; 14 A.L.R.2d 786.

 Foreseeability is an indispensable element of tort liability. Houston Lighting & Power Co. v. Brooks, 161 Tex. 32, 336 S.W.2d 603. The legal test required was recently restated by the Supreme Court in Motsenbocker v. Wyatt, Tex., 369 S.W.2d 319, 323, as follows: "For a result to be legally foreseeable, however, it is not 'required that the particular accident complained of should have been foreseen. All that is required is "that the injury be of such a general character as might reasonably have been anticipated; and that the injured party should be so situated with relation to the wrongful act that injury to him or to one similarly situated might reasonably have been foreseen."' Carey v. Pure Distributing Corporation, 133 Tex. 31, 124 S.W.2d 847." The issue of foreseeability is submitted to the jury as a part of the definition of "proximate cause."

Appellant showed that for the fourteen years it had operated the lot no one had ever fallen into the creek or had

attempted to take a short-cut to the theatre. The creek usually had only a small flow of water, except during a heavy rainfall. We cannot say, as a matter of law, that appellant could not reasonably anticipate that someone would fall into the creek if it was obscured, and suffer some type of injury. It is undisputed that the visibility was obscured on this night because of the heavy rain and there is some evidence that the rainfall was unprecedented. Such an issue was not requested or submitted to the jury. Certainly, a heavy rain could be reasonably anticipated to occur, and the jury by its findings rejected the defense of new and intervening cause and unavoidable accident. In our opinion, there is some evidence to support these findings. We overrule appellant's point that the accident was not foreseeable as a matter of law.

The judgment of the trial court is reversed and the cause remanded as to appellant, Parking, Inc.