Roberto GUEREQUE and Maria Guereque, Individually and as Next Friend of Juan Pablo Guereque, Rosalba Guereque and Kristina Guereque, Minors, and as Representatives of Jorge Eduardo Guereque, a Deceased Minor, Appellants,

v.

Carmen THOMPSON, Esther Villalobos, and Lucy Enriquez, Individually and d/b/a Sunset Trailer Court and Does 1–10 Inclusive, Appellees.

No. 08–96–00153–CV.

Court of Appeals of Texas, El Paso.

Aug. 28, 1997.

Rehearing Overruled Oct. 22, 1997.

Ray Velarde, El Paso, for Appellants.

David L. Curl, Jeffrey T. Weikert, Studdard & Melby, P.C., El Paso, for Appellees.

Before BARAJAS, C.J., and LARSEN and McCLURE, JJ.

### OPINION

McCLURE, Justice.

This is an appeal from a summary judgment granted against Appellants on their claims of negligence and gross negligence arising from the drowning death of their son. Finding first that their statutory negligence claims are not properly before the Court, and second, that no common law duty of care was owed by Appellees, we affirm.

### FACTUAL AND PROCEDURAL SUMMARY

Appellants brought suit for the wrongful death of their ten year old son, Jorge. We take as true for purposes of summary judgment the following facts alleged by them as non-movants. At the time of the events giving rise to this lawsuit, Appellants lived at Appellees' property, the Sunset Trailer Court. The rear of the trailer park abuts the Franklin Canal. In the early evening of March 5, 1993, Jorge was playing ball with other children at the trailer court. After the ball fell into the canal, Jorge tried to retrieve it by crawling through a large gap in the fence. Tragically, he drowned in the canal.

Appellants' original petition, filed November 16, 1993, alleged that the fence guarding the trailer park residents from the canal was improperly erected. Specifically, Appellants alleged that Appellees were negligent:

- in creating a dangerous condition due to the lack of proper fencing on the premises;
- in maintaining a dangerous condition due to the lack of proper fencing;
- in failing to remedy a dangerous condition due to a lack of proper fencing;
- in failing to warn of the dangerous condition created by the lack of proper fencing; and,
- in other acts of negligence.

Appellants also alleged that Appellees were grossly negligent because they knew of the dangerous condition of the fence and failed or refused to remedy it in conscious indifference to the safety of the residents.

Appellees filed an original answer generally denying the allegations on January 19, 1994, and on August 4, 1994, they filed a motion for summary judgment, which alleged in pertinent part that:

- the premises defect, the Franklin Canal, was not on Appellees' property on the date of the accident;

- Appellees never owned, operated, or controlled the Franklin canal;
- Appellees owed no greater duty than the general public with respect to any hazards that may have arisen from conditions outside the trailer park, not caused by Appellees;
- Jorge Guereque was no longer an invitee with respect to Appellees when he left the premises of the trailer park;
- the Franklin Canal is one of many canals throughout El Paso; such canals are not unique and do not constitute unique dangers that would impose on Appellees a duty to warn;
- Jorge Guereque was no more than a trespasser to the owner of the property where the canal is located; Appellees should not be held to a higher duty of care than that imposed on the actual owner of land where the accident occurred; and
- the canal is open and clearly visible, such that Appellees had no greater knowledge of its dangers than would Jorge's parents or the public in general.

In support of these grounds for summary judgment, all of which sought to establish that Appellees owed no duty of. care with respect to hazards related to the Franklin Canal, Appellees filed the affidavit of Carmen Thompson, one of the Appellees and a co-owner of the Sunset Trailer Court. Thompson attested that a canal or drainage ditch runs behind the trailer park, approximately sixty feet behind the property line and on an embankment, about eight feet higher than the land on which the trailer park is located. She stated that the fence separating the trailer park and the canal property actually rests three inches past the property line onto the canal property, which is owned by the El Paso Electric Company. She claimed that Appellees had no "connection" with the canal, and no economic interest in it or control over it. Thompson's affidavit is silent as to whether the length of canal directly behind the trailer court is open and obvious, or is obscured by its embankments or vegetation.

Appellants filed their response to the motion for summary judgment on October 4, 1994, alleging that the Franklin Canal was "an open and obvious danger as a matter of law." Appellants also reiterated their allegation that the fence separating the trailer court from the canal was in poor repair, with large gaps in it, through which a child could pass. The response did not contest the other facts attested to in Thompson's affidavit. Instead, it contested the legal conclusion reached in the motion for summary judgment, urging that Appellees had assumed a duty of care by constructing the fence. Moreover, Appellants argued that the incursion of the fence onto the adjoining property imposed on Appellees a duty of care on the adjoining property itself.

Some five weeks later, the allegation concerning the condition of the fence was confirmed by deposition testimony from Manuel Hernandez, the property manager of the trailer court. He established that the fence was in existence in 1958 when the current owners of the trailer court bought the property, that the fence was in serious disrepair at the time Jorge drowned, that Hernandez informed the owners of the trailer court that the fence violated the El Paso City Code, and that the owner told Hernandez not to do anything unless the city inspector required the repair of the fence.

The trial court set the summary judgment hearing for January 23, 1995. On January 17, six days prior to the scheduled hearing, Appellants filed their supplemental response in opposition to the motion for summary judgment, incorporating the testimony of Hernandez. On January 20, three days prior to the hearing, Appellants filed their first amended original petition adding a second claim based on statutory negligence, or negligence per se, to the common law negligence claim. Citing El Paso Municipal Code 20.80.310 (requiring property owners to erect and maintain either a six foot high chain link fence or masonry wall on property lines adjacent to drainage or irrigation canals) and 20.40.090 (requiring a trailer park to provide a minimum of 3,000 square feet for a children's play area), Appellants alleged that they were in the class of persons intended to be protected by the ordinances.

On January 23, the trial court conducted the hearing on the motion for summary judg-

ment.[1] The record contains no written objections from either Appellants or Appellees. Specifically, there is no motion from Appellants requesting leave to file the first amended original petition within seven days of the summary judgment hearing, there are no written objections to the trial court's refusal to grant leave to file the first amended original petition, and there are no objections with respect to the manner in which the summary judgment hearing itself was conducted. Nor is there any written objection from Appellees concerning unfair surprise or other prejudice that would result from a decision by the trial court to grant Appellants leave to file the first amended original petition.

On February 2, 1995, Appellants filed their second supplemental response to the motion for summary judgment which refers to arguments made by Appellees in a document that appears nowhere in the record: a supplemental response from Appellees in which they responded to the negligence per se allegation raised in Appellants' first amended original petition. Appellees had offered an affidavit and other documents to demonstrate that the trailer park was in compliance with the El Paso Municipal Code. In their second supplemental response, Appellants responded to these arguments and stated that, at a minimum, the question of the trailer park's compliance with the city code created a fact issue precluding summary judgment. Appellants incorporated the deposition testimony of Hernandez and Thompson.

By letter dated September 5, 1995, the trial court advised counsel of its decision to grant summary judgment relief. On September 27, Appellees filed a motion for entry of judgment, reciting that the summary judgment motion was heard on January 23, 1995, that summary judgment had been rendered in favor of Appellees, and requesting that the trial court enter judgment. The parties then exchanged motions and memoranda concerning the trial court's decision not to consider Appellants' first amended petition, first supplemental summary judgment response, or second supplemental summary judgment re-

sponse. The entry hearing was conducted on January 12, 1996. On January 12, the court signed an order granting the motion for summary judgment as to all allegations raised in Appellants' original petition. The order states specifically that the court refused to consider Appellants' first amended original petition, or Appellants' first or second supplemental summary judgment responses, because these documents were filed within seven days of the January 23, 1995 hearing without leave of court in violation of Tex. R.Civ.P. 63. Significantly, the trial court's refusal to consider the first amended petition means that the negligence per se claim was excluded from consideration.

## STANDARD OF REVIEW

Summary judgment is appropriate when there exists no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R.Civ.P. 166a(c). The purpose of summary judgment is the elimination of patently unmeritorious claims or untenable defenses; it is not intended to deprive litigants of their right to a full hearing on the merits of any real issue of fact. *Gulbenkian v. Penn,* 151 Tex. 412, 416, 252 S.W.2d 929, 931 (1952). In reviewing the propriety of a summary judgment, we are bound by these standards: (1) the movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue, evidence favorable to the non-movant will be taken as true; and (3) every reasonable inference must be indulged in favor of the non-movant, and any doubts must be resolved in its favor. *Nixon v. Mr. Property Management Co., Inc.,* 690 S.W.2d 546, 548–49 (Tex.1985).

A defendant moving for summary judgment assumes the burden of showing as a matter of law that the plaintiff has no cause of action against him. In order to do so, however, it is not necessary that the defendant disprove all elements of the plaintiff's cause of action. If a defendant can disprove

---

1. On appeal, Appellants now claim that the January 23 proceeding was not actually a hearing, but an *in camera* conversation with the trial judge.

They allege that the parties had an understanding that another, more formal summary judgment hearing would be held at a later date.

any one of the essential elements of the plaintiff's cause of action, then the court should render summary judgment for the defendant. *Citizens First Nat'l Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d 292, 294 (Tex.1976).

█ In the case before us, the order granting summary judgment does not specify the grounds on which the motion was granted. On appeal, we must therefore affirm the summary judgment if any of the grounds raised by Appellees were sufficient. *Weiner v. Wasson*, 900 S.W.2d 316, 317 n. 2 (Tex. 1995).

Appellants raise four points of error. The first three hinge on the question of duty and allege that genuine issues of material fact preclude summary judgment on the common law negligence claim. Appellants also highlight fact issues created by Appellees' alleged violations of the El Paso City Code. In their fourth point of error, Appellants urge that the trial court abused its discretion by refusing to consider their first amended petition and supplemental summary judgment responses. Because we cannot address the negligence per se arguments included in the first three points of error unless we determine that the trial court abused its discretion by refusing to consider the amended petition, we will address the last point of error first.

## REFUSAL TO CONSIDER AMENDED PETITION

█ Initially, we observe that Appellants obtained the deposition of Manuel Hernandez, who provided information concerning the El Paso City Code violations arising from the dilapidated condition of the trailer park fence in November 1994. Appellants therefore could have amended their petition to include their negligence per se claim at anytime between November 10, 1994 and January 16, 1995 without any procedural obstacle. We acknowledge that the amended petition, which the trial court refused to consider, was crucial because it contained the negligence per se claim. Had Appellants sought leave of court to file the amended petition within seven days of the summary judgment hearing, Appellants could well have claimed that the trial court abused its discretion by refus-

ing to consider the amended petition because Appellees failed to show surprise or other prejudice. However, because Appellants never requested leave of court to file the amended petition, they failed to meet the threshold requirement of TEX.R.CIV.P. 63, and the trial court was within its discretion to refuse any consideration of the amended pleading.

TEX.R.CIV.P. 63 states in pertinent part:

## RULE 63. AMENDMENTS AND RESPONSIVE PLEADINGS

Parties may amend their pleadings, respond to pleadings on file of other parties ... and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; *provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained,* which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party. [Emphasis added.]

█ Texas courts have construed the requirements of Rule 63 in favor of the right to amend. Once a party requests leave of court to file an amended pleading within seven days of trial, the court has no discretion to refuse the amended pleading unless the opposing party demonstrates that unfair surprise would result, or unless the amended pleading contains a new cause of action or defense, which can be considered prejudicial on its face. *Chapin & Chapin v. Texas Sand & Gravel Co., Inc.*, 844 S.W.2d 664, 665 (Tex. 1992). Even where a new cause of action or defense renders the amended pleading facially prejudicial to the opposing party, case law suggests that the opposing party must object to the amended pleading on the basis that a substantive change has been made. *See for example, Hardin v. Hardin*, 597 S.W.2d 347, 349–50 (Tex.1980).

█ Even where the record provides no indication that the amending party sought

leave from the trial court, and there is no order from the court granting leave, appellate courts *presume* that the trial court granted leave to amend where the record reflects no showing of surprise by the opposite party *and* it reflects that the trial court considered the allegations contained in the amended pleading. *Goswami v. Metropolitan Sav. and Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988). The record there contained an amended pleading filed within seven days of a summary judgment hearing, but there was no request for leave to amend, no order granting leave, no motion to strike the amended pleading, no order striking the amended pleading, and no attempt by the opposing party to show surprise. However, the trial court's judgment stated that all pleadings on file had been considered. Under these circumstances, the Supreme Court concluded that leave of court to file the amended petition should be presumed, despite the absence of clear indications in the record that the amending party had complied with Rule 63. *Goswami,* 751 S.W.2d at 490. *See also, Brooks Fashion Stores v. Northpark Nat'l Bank,* 689 S.W.2d 937, 940 (Tex. App.—Dallas 1985, no writ).

This case presents many facts that parallel *Goswami.* Appellants attempted to file an amended petition a few days before trial; the record contains no motion requesting leave to file within seven days of the hearing, no order granting leave to file, no written objection to the amended petition from Appellees on the basis of surprise, no motion to strike and no order striking the amended petition. However, the record in *Goswami* reflected that the trial court had considered the amended petition in rendering judgment; indeed the judgment explicitly stated that all pleadings on file had been considered. This is the critical element missing here. The order before us explicitly states that the trial court considered only those pleadings on file seven or more days before the summary judgment hearing and expressly provides that the amended petition had not been considered because Appellants never requested leave of court to file it. Because of this judicial finding, the whole issue of the trial court's potential abuse of discretion in refusing to grant leave to amend never arises. As

the trial court explained at the January 12, 1996 hearing on Appellees' motion to enter judgment:

The pleadings were not timely filed, the amended pleadings, no leave of Court. I have read the *Goswami* case, and it talks about that there's no record whether or not leave of Court was requested or granted. In this particular case, no leave of Court has ever been requested. I—I agree with you that under the cases, had leave of Court been requested, then the Court, in granting it, would have had to consider whether there was a showing of surprise to the opposite party, but in this case no leave of Court was ever requested.

■ On appeal, Appellants confirm that they failed to seek leave to amend. They maintain, however, that they were under no obligation to seek leave from the trial court to amend because a summary judgment hearing is not a "trial," as contemplated by Rule 63 and that therefore, no leave of court is necessary. However, the Texas Supreme Court has characterized summary judgment hearings as "trials" for purposes of Rule 63. *Goswami,* 751 S.W.2d at 490. Although we recognize the drastic consequences for Appellants' negligence per se claim flowing from the failure either to amend more than seven days before the summary judgment hearing, or to seek leave to amend within seven days, we cannot conclude that leave to amend should have been granted when the record provides no indication that Appellants ever sought leave to amend in the first place.

Appellants also allege that the amended petition was timely filed because the parties did not consider the January 23 proceeding as the summary judgment hearing but merely an *in camera* conversation. They claim that all parties understood that there would be a more formal hearing at a later date. Appellants point to the fact that pleadings were filed after January 23, 1995 as an indication that the January 23 hearing was not intended to be final.

■ We agree with Appellants that Appellees' supplemental response concerning the negligence per se claim, apparently served on Appellants between January 23 and Febru-

ary 2, 1995, as well as the Appellants' response thereto filed February 2, 1995, raise some question as to whether the parties understood the January 23, 1995 hearing to have disposed of the summary judgment motion. However, in its notice of hearing dated December 23, 1994, the trial court itself set January 23, 1995 as the hearing date for deciding the summary judgment motion. The trial court also referred to January 23, 1995 as the date on which the summary judgment hearing transpired in its January 12, 1996 order granting summary judgment. Moreover, at the January 12, 1996 hearing on Appellees' motion to enter judgment, the trial court characterized the January 23, 1995 proceeding as a thorough hearing of the issues before the court:

Well, let me state first of all that in the opinion of this Court, a hearing was held in this matter on January 23rd, 1995. My recollection of it is different than yours, Mr. Villalba, in that I remember it being a very lengthy hearing in my chambers. It was not on the record because [at] the summary judgment hearing, of course, no evidence can be admitted and the summary judgment is basically done on the—on the writings on file. But the arguments—vigorous arguments were made on both sides of the matter. The Court considered those arguments as has been alluded to.

We cannot conclude on the record before us that the summary judgment hearing in the present case was improper or insufficient, or that the parties did not understand that the January 23, 1995 hearing was intended to dispose of the issues raised by Appellees' motion for summary judgment. Even if we were to characterize the January 23 proceeding as an informal, *in camera* proceeding, no further hearing would have been necessary. Because parties cannot present oral testimony during a summary judgment hearing, no evidentiary record is created. *Jack B. Anglin Co., Inc. v. Tipps*, 842 S.W.2d 266, 269 n. 4 (Tex.1992). A trial court can rule on a summary judgment motion on the basis of the written motion, response, and supporting summary judgment evidence, with no hearing whatsoever. *Martin v. Cohen*, 804 S.W.2d 201, 202–03 (Tex.App.—Houston

[14th Dist.] 1991, no writ); *Owen Electric Supply Inc. v. Brite Day Constr., Inc.*, 821 S.W.2d 283, 288 (Tex.App.—Houston [1st Dist.] 1991, writ denied).

Because we recognize the severe consequences for Appellants that resulted from the trial court's refusal to consider their negligence per se claim, we have carefully reviewed the record in order to determine whether their original petition would have provided notice to Appellees of a possible negligence per se claim. In *Sage v. Wong*, 720 S.W.2d 882, 884 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.), the Court described what constitutes fair notice of a negligence per se claim. "Fair notice" consists of notice specific enough to allow an opposing attorney of reasonable competence to ascertain the nature and basic issues of the controversy, and what would constitute relevant testimony with respect to those claims. Reasonable notice necessarily includes all elements of a cause of action. *Wong*, 720 S.W.2d at 884, citing *Rodriguez v. Yenawine*, 556 S.W.2d 410, 414 (Tex.Civ.App.—Austin 1977, no writ). Thus, a plaintiff must allege that the defendant's conduct proximately caused harm to plaintiff, violated a statute or ordinance, and that plaintiff is a member of the class of persons that the statute or ordinance seeks to protect. *Wong*, 720 S.W.2d at 884. In the present case, the factual allegations contained in the original petition, upon which Appellants based their common law negligence claim, are identical to the factual allegations giving rise to the negligence per se claim contained in the untimely amended petition. However, the original petition alleges neither that Appellees violated a statute or ordinance, nor that Appellants and the deceased belonged to the class of persons that the statute or ordinance intends to protect. We cannot conclude that the original petition put Appellees on notice that Appellants intended to allege negligence per se such that Appellees would have had the duty to specially except or else waive any complaints about the lack of specificity in Appellants' original complaint. *Roark v. Allen*, 633 S.W.2d 804, 810 (Tex.1982). Point of Error Four is overruled.

## DUTY OF CARE

Points of Error Nos. One through Three attack the trial court's decision to grant summary judgment because genuine issues of material fact existed. Although Appellants raise a number of fact issues they contend are unresolved, the summary judgment hinges on the single issue argued by Appellees in response to Appellants' common law negligence claim: whether Appellees owed a duty of care either to prevent injuries on adjacent property on which an open and obvious hazard existed, or to provide warnings that a hazard existed on adjoining property. We conclude that no duty existed given the facts presented and that summary judgment was therefore proper.

■■■ Appellants first contend that the motion for summary judgment was insufficient because no competent summary judgment proof accompanied it. We find that the statements contained in the affidavit of Carmen Thompson, despite her status as an interested party, constitute competent summary judgment proof with respect to the issue of duty. As an interested witness, Thompson was required to attest in a clear, positive, direct, fashion that was otherwise free from contradictions and inconsistencies, and could only attest to facts that could have been easily controverted. TEX.R.CIV.P. 166a(c). Thompson's affidavit met these requirements because it provided clear testimony concerning the physical location of the canal in relation to the property line with the trailer court, and concerning the lack of control exercised by the trailer court over the property where the canal runs. These were clear, positive, direct statements with no apparent contradictions and which Appellants easily could have contradicted by inspection of the premises or with evidence obtained through the discovery that had already occurred prior to the filing of the summary judgment motion.

■■■ Appellants are correct that neither the motion for summary judgment nor Thompson's affidavit specifically addresses the question of duty. For example, Appellees never established who actually constructed the fence separating the trailer court from the Franklin Canal. While the record reflects that Hernandez testified on deposition that the fence was already in existence at the time Appellees bought the property, giving rise to the inference that they did not build this fence, the deposition was taken after the motion for summary judgment was filed. A motion for summary judgment must itself expressly state the grounds upon which it is made, and must stand or fall on these grounds alone. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex.1993). However, regardless of who built the fence, the summary judgment evidence precludes the possibility that Appellees owed Appellants a duty under principles of common law negligence.

■■■ Ordinarily, a person who does not own, occupy, or otherwise control real property cannot be held liable for dangerous conditions thereon. *City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex.1986); *Dixon v. Houston Raceway Park, Inc.*, 874 S.W.2d 760, 762–63 (Tex.App.—Houston [1st Dist.] 1994, no writ). It is possession and control which generally must be shown to establish liability. *Page*, 701 S.W.2d at 835, *citing* 62 Am.Jur.2d *Premises Liability* Secs. 12 and 14 (1972). For example, an owner or occupier of property has no duty to insure the safety of persons who leave the owner's property and suffer injury on adjacent highways or railroad tracks, or to insure safety against the dangerous acts of third persons. *Dixon*, 874 S.W.2d at 762; *Portillo v. Housing Authority of the City of El Paso*, 652 S.W.2d 568 (Tex.App.—El Paso 1983, no writ); *Naumann v. Windsor Gypsum, Inc.*, 749 S.W.2d 189, 191 (Tex.App.—San Antonio 1988, writ denied). In the present case, it is uncontested that Jorge drowned on property that Appellees did not own, occupy, or control.

■■■ Despite the physical location of the drowning, Appellants have attempted to establish that Appellees nevertheless owed them a duty of care. Texas courts have recognized four closely-related "assumed duty" exceptions to the general rule that there is no duty to prevent accidents on adjacent property that a person neither owns nor occupies. First, a person who agrees or contracts, either expressly or impliedly, to

make safe a known, dangerous condition of real property may be held liable for the failure to remedy the condition. *Page,* 701 S.W.2d at 834–35, *citing Gundolf v. Massman–Johnson,* 473 S.W.2d 70 (Tex.Civ. App.—Beaumont), *writ ref'd n.r.e. per curiam,* 484 S.W.2d 555 (Tex.1972). Second, a person who has created a dangerous condition may be liable even though not in control of the premises at the time of injury. *Page,* 701 S.W.2d at 834–35, *citing Gehring v. Strakos,* 345 S.W.2d 764 (Tex.Civ.App.—Houston1961). Third, a lessee who assumes actual control over a portion of adjacent property also assumes legal responsibility for that adjacent portion, even though none of the adjacent property is included in the lease. *Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322 (Tex.1993). Fourth, where an obscured danger exists on land directly appurtenant to the land owned or occupied, and where that danger is near a place where invitees enter and exit the landowner's or occupier's property, the owner or occupier owes a duty to those invitees entering and exiting to warn of the danger. *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609 (1950); *Parking, Inc. v. Dalrymple,* 375 S.W.2d 758, 762 (Tex. Civ.App.—San Antonio 1964, no writ). Appellants have attempted to establish that Appellees owed them a duty under each of these exceptions to the general rule. We will address each in turn.

### *The "Agreement to Make Safe" Exception*

 Appellants allege that the existence of the fence, which abuts the Franklin Canal, demonstrates that Appellees undertook to make the hazardous condition on adjacent property safe for the tenants of the trailer park. To support the theory that Appellees assumed a duty to make the canal safe by making it inaccessible, Appellants cite *C & H Nationwide, Inc. v. Thompson,* 810 S.W.2d 259, 266 (Tex.App.—Houston [1st Dist.] 1991), *modified on other grounds,* 903 S.W.2d 315 (Tex.1994); *Seay v. Travelers Indem. Co.,* 730 S.W.2d 774, 776–77 (Tex.App.—Dallas 1987, no writ), and the RESTATEMENT (SECOND) OF TORTS, §§ 323 and 324(A) for the principle that even where one does not initially owe a duty to a third person, one can assume a duty either gratuitously or by un-dertaking to perform a task in the place of another person. Where the negligent performance of the assumed task then results in injury to a third person, the person who assumed the task may be liable. *Nationwide* involved a motorist who was killed by a pipe that fell off a tractor trailer traveling in the opposite direction. The owner of the pipe had employed a contractor to supervise the loading of the pipe onto the trucks of the trucking company to ensure that the pipe was not damaged. The Court found that the contractor had assumed the duty owed by the trucking company to load the pipe securely. In *Seay,* a safety relief valve on a hospital boiler accidentally discharged scalding water and killed a hospital worker. Because the defendant insurance company had voluntarily undertaken to inspect the boilers of its insured and had given them favorable ratings, the Court applied the "assumed duty" principle. In both of these cases, the parties were found to have assumed a duty by providing services in an effort to make potentially dangerous conditions safe, whether by supervising the loading of pipes or by inspecting safety valves on boilers that were potentially hazardous to hospital employees.

This "assumed duty" exception was recognized in *Page* as being applicable to impose a duty upon a person who agrees to make safe a known, dangerous condition of real property and fails to do so. *Page,* 701 S.W.2d at 831. Page rented a house from Melton. On a lot in back of the house was a storage shed used by Melton. Arsonists tried to burn the shed three different times. Each time, the fire department of the City of Denton extinguished the fire, and each time the fire marshal investigated the scene. Some time later, Page went to the shed to investigate noises and as he entered the building, he was met with an explosion and a "tornado of flames." Page sued Melton and the city on the theory that the city, through its fire marshal, was negligent in its investigation of the prior arson attempts because the marshal failed to discover and remove gasoline tanks stored in the building and failed to warn Page of the dangerous condition. However, the Court found no duty existed because the City of Denton did not exercise control over

the building, "nor did it expressly or impliedly contract to remedy any dangerous condition on the property." *Id.* at 831. Neither had the fire marshal promised to find and remedy any unsafe condition in the building nor to make the building safe from arson. *Id.*

To apply the "agreement to make safe" exception to the present case, the facts would have to reflect that Appellees expressly or impliedly contracted to make the Franklin Canal safe. If Appellants are correct in their assertion that the mere construction of the fence, without more, provided evidence that Appellees had assumed responsibility for making the canal safe, then it would be the burden of Appellees, as movants on summary judgment, to provide summary judgment proof that Appellees had not constructed the fence or otherwise assumed responsibility for the safety of people attempting to enter the canal property. However, we disagree with this premise. Appellants cannot satisfy the "assumed duty" rule articulated in *Page, Gundolf, Nationwide* and *Seay* simply by pointing to the existence of a fence. If the construction of a fence automatically imposed an "assumed duty" on a landowner for accidents occurring on adjacent property, then the exception would swallow the rule. All landowners with fenced property would be deemed to have assumed a duty to prevent accidents on their neighbors' lands. The Supreme Court has recently rejected a similar argument in *Science Spectrum, Inc. v. Martinez,* 941 S.W.2d 910, 912 (Tex.1997)(simply erecting a wall around leased premises does not constitute an exercise of control over adjacent property). We likewise reject Appellants' reading of the "agreement to make safe" exception.

### The "Creation of the Hazard" Exception

Appellants assert that Appellees owed a duty because they created the dangerous condition that caused the accident. However, the "dangerous condition" to which Appellants refer is the fence between Appellees' property and the Franklin Canal, not the Franklin Canal itself. In order for the "dangerous condition" exception to apply, Appellants would have to demonstrate either that Appellees actually created the instrumentality that caused injury or death, or that Appellees controlled the property where the danger existed and failed to provide warnings. *Page,* 701 S.W.2d at 834–35; *Strakos v. Gehring,* 360 S.W.2d 787 (Tex.1962). The fence did not cause Jorge's death; the child drowned in the canal some sixty feet beyond the fence, on land owned by the El Paso Electric Company. Appellants cannot demonstrate either that Appellees created the danger presented by the Franklin Canal, or that Appellees controlled the property through which the canal runs. This exception is inapplicable to the facts presented.

### The "Incursion on Adjacent Property" Exception

Because the fence actually stands on the El Paso Electric Company property where the Franklin Canal runs, Appellants suggest that the "incursion on adjacent property" exception applies. In support of this theory, Appellees cite *Wal–Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322 (Tex.1993). There, the Texas Supreme Court held that a lessee who assumes actual control over a portion of adjacent property also assumes legal responsibility for that adjacent portion, even though none of the adjacent property is included in the lease. Wal–Mart had leased only the space occupied by the store itself. The property owner retained control of the parking lot, including sidewalks, and other common areas. *Alexander,* 868 S.W.2d at 324. Despite the terms of the lease agreement, Wal–Mart constructed a ramp onto the parking lot, and a store patron subsequently suffered an injury on a raised curb that formed part of the ramp. The Court held that despite the contract terms reflecting that Wal–Mart had no control over the parking lot, the store had assumed actual control over a portion of the parking lot area by constructing the ramp, and had assumed a duty of care with respect to patrons who injured themselves on the curb appurtenant to the ramp. Simply stated, *Alexander* enunciates the principle that an owner or occupier of property is responsible for those adjacent premises over which it exercises control.

■ Here, Appellants assert that the existence of the fence on Franklin Canal property means that Appellees assumed a duty of care for potential canal-related accidents. They contend that, like the ramp in *Alexander,* the location of the fence extends Appellees' duty of care past the property line to the fence itself. However, the parallel with *Alexander* ends where the fence line ends. *Alexander* did not hold that by constructing the ramp, the store became responsible for *all* injuries that occurred on the parking lot, however far from the ramp itself. In the present case, the fence beyond the property line did not render Appellees responsible for accidents occurring in the canal some sixty feet beyond the fence line.

The Supreme Court recently addressed the scope of a landowner's duty to prevent injuries on adjacent property under *Alexander,* 868 S.W.2d at 322. *Science Spectrum, Inc.,* 941 S.W.2d at 910. Martinez suffered an electric shock when he cut a wire on premises adjacent to space rented by Science Spectrum. Martinez argued that Science Spectrum assumed a duty for hazards such as the live wire when it constructed a partitioning wall that allegedly obscured the live wire and therefore made it dangerous for unsuspecting workers. The Court disapproved of the Court of Appeals' decision, which had relied on *Alexander* to reverse the summary judgment granted in favor of Science Spectrum. The Court of Appeals had analogized the construction of the ramp in *Alexander* to Science Spectrum's construction of the partition wall and concluded that Science Spectrum had assumed a duty for hazards arising in the adjacent space where Martinez was injured. The Supreme Court disagreed, explaining that in *Alexander,* the plaintiff suffered injury on the ramp that Wal–Mart had actually constructed and controlled. As such, one of the two exceptions from *Page* applied: Wal–Mart had assumed actual control over a portion of adjacent premises. In *Science Spectrum,* by contrast, the accident occurred in adjacent space over which Science Spectrum exercised no control. The fact that Science Spectrum constructed a partition wall did not give rise to an assumed duty of care:

> By simply erecting a wall around its own leased premises to separate that space from the rest of the building, Science Spectrum did not exercise control over the area adjacent to its premises in a way analogous to the facts in *Alexander.*

*Science Spectrum, Inc.,* 941 S.W.2d at 912. The Court upheld the reversal of the summary judgment, however, on grounds inapplicable to the present case. *Id. Science Spectrum* explicitly rejects an application of *Alexander* here.

### The "Latent Defect at Entrance or Exit" Exception

■ Lastly, Appellants cite a line of Texas cases that create a narrow exception to the general rule that a landowner or occupier owes no duty of care beyond that land which he actually owns or controls: where an obscured danger exists on land directly appurtenant to the land owned or occupied, and where that danger is near a place where invitees enter and exit the property, the owner or occupier owes a duty to those invitees entering and exiting to warn of the danger. In *Renfro Drug Co. v. Lewis,* 235 S.W.2d at 616–18, the Supreme Court found such a duty to exist with respect to a common door between a drug store and a parking garage. In *Dalrymple,* 375 S.W.2d at 762, a commercial parking lot directly abutted a creek, and telephone poles positioned along the periphery of the lot obscured the presence of the creek. Cars actually jutted out over the creek when they parked next to it, so that the creek was obscured from view. The creek was approximately ten to fifteen feet deep and about twenty feet wide. On the other side of the creek was a theater. During a hard rain, a father and son parked in the lot and tried to run to the theater. Because of the telephone poles, the cars jutting out over the creek and the hard rain, neither saw the creek. They both fell in and the boy drowned. *Dalrymple,* 375 S.W.2d at 759–60. The Court held that the landowner's duty to the father and son as invitees of the parking lot extended not only to ensuring that the parking lot itself was safe, but also that potential entrances and exits were safe as well. The fact that the parking lot offered free parking for the theater directly across

the street made it reasonably foreseeable that patrons would attempt to cross directly to the theater, especially since the creek was obscured from view. The Court of Appeals affirmed the jury's decision in favor of the plaintiffs, holding that it could not be concluded as a matter of law that the defendant owed no duty either to erect barriers or to provide warnings. *Dalrymple,* 375 S.W.2d at 762–63.

There is a split of authority among Texas courts concerning the duty outlined in *Dalrymple.* For example, the Dallas Court of Appeals has disavowed *Dalrymple* and its progeny as impermissibly extending the duty of care beyond the property actually occupied or controlled. *Johnson v. Tom Thumb Stores, Inc.,* 771 S.W.2d 582, 585 (Tex.App.— Dallas 1989, writ denied). While we recognize that the creek in *Dalrymple* is a hazard similar to the Franklin Canal in the case before us, a factual distinction prevents application of the principle here. *Dalrymple* and subsequent cases relying on it have emphasized that the possessor or owner of land owes a duty to warn concerning potential hazards at foreseeable entrances and exits where the hazard is *obscured* from view. In the present case, Appellants have continually pleaded that the Franklin Canal constitutes an *open and obvious hazard as a matter of law.* Appellees have consistently agreed with this characterization of the canal. As such, we cannot impose the same duty on Appellees with respect to the Franklin Canal as the San Antonio Court of Appeals imposed on the commercial parking lot owner in *Dalrymple.*

## CONCLUSION

This Court has held specifically that a landowner is not responsible for injury to a child that results when the child jumps the landowner's fence to chase a train on adjacent property and suffers injury. *Portillo,* 652 S.W.2d at 568. *Portillo* did not involve a fence that was poorly maintained and through which a child could easily pass, as in the present case. But the fence there, like the fence here, did not cause the injuries to the child. Focusing on the physical location of the hazard that actually caused the injury,

this Court noted that "[A]n occupier of the premises has no greater duty than does the public generally regarding conditions outside his premises and not caused by the occupier." *Portillo,* 652 S.W.2d at 569 [citations omitted]. As in *Portillo,* the hazard that caused Jorge's death existed outside Appellees' premises, and Appellees did not cause the condition. *See also, Dixon,* 874 S.W.2d at 762–63. Because the facts of this case fit none of the exceptions to the general rule, the holding in *Portillo* applies. We conclude as a matter of law that Appellees owed no common law duty of care to prevent the accident. We reiterate that Appellants' negligence per se claim arising from the statutory duty of care imposed by the El Paso City Code is not before us. Points of Error Nos. One through Three are overruled. We affirm the summary judgment.